THE DES MOINES NATIONAL BANK v. THE WARREN COUNTY BANK, Appellant.

**Transfer of Bank Stock:** RIGHT OF TRANSFEREE. Code, section 1059, subdivision 7, authorizes corporations to establish by-laws, and make all necessary regulations. Section 1076, provides that a copy of the by-laws, with the names of the officers attached, must be posted in the principal places of business. Section 1078, pro vides that the transfer of shares is not valid, except as between the parties thereto, until it is regularly entered upon the books of the company. *Held*, that where an officer of a bank and holder of a certificate of stock, which recited that it was "subject to its by-laws and articles of incorporation," and that it was transferable only on the books of the bank, tranferred such stock by assign ment only, when he was indebted to the bank, and before the bank had posted a copy of its by-laws, and the transferee had no

knowledge of any by-law providing that the bank should have a lien on all stock as security, such transferee took the stock free of any lien for the indebteness of the stockholder.

*Appeal from Warren District Court.*—HON. J. H. APPLE-GATE, Judge.

TUESDAY, FEBRUARY 4, 1896.

ACTION in equity to recover from defendant, John Cheshire, the amount due on a promissory note made by him, and to foreclose a lien claimed by the plaintiff on thirty shares of the capital stock of the defendant, the Warren County Bank, pledged to secure the payment of the note. There was a hearing on the merits, and a decree for the plaintiff. The Warren County Bank appeals.—*Affirmed.*

*H. McNeil* and *Gatch, Connor & Weaver* for appellant.

*Dudley & Coffin* for appellee.

ROBINSON, J.—The plaintiff is a corporation duly organized under the laws of the United States, as a national bank. The Warren County Bank is a corporation organized and doing business as a bank, under the laws of this state. In December, 1891, John Cheshire borrowed of the plaintiff the sum of three thousand dollars. The loan was renewed from time to time until July, 1892, when it was again renewed, and the note in suit, for the sum of three thousand dollars, was given. To secure the payment of this loan, Cheshire transferred to the plaintiff a certificate of which the following is a copy: "No. 72. Share $100.00 each. Shares, 30. Warren County Bank, Indianola, Iowa. This certifies that John Cheshire, of Indianola, Iowa, is the owner of thirty shares of the capital stock of the Warren County Bank, subject to

its by-laws and articles of incorporation. Transfer-
able only on the books of said bank in person or by
attorney on surrender of this certificate. Indianola,
Nov. 25, 1887. [Seal.] John Cheshire, President. J.
H. Whitney, Cashier." On the certificate was an
indorsement as follows: "For value received, I hereby
sell, assign, and transfer to ————, of ————, ·-————
shares of the within-mentioned stock, and appoint
———— as my attorney to execute all necessary trans-
fers upon the books of the bank. Dated this —— day
of ·————, 188—. [Signed.] John Cheshire." For
more than five years preceding November, 1892, and
when the loan was made and renewed, and at the time
the certificate of stock was transferred, Cheshire was
president of the Warren County Bank. He was also
connected with the Swan-Cheshire Land & Cattle Com-
pany, which was a large borrower of the Warren
County Bank, to which it had given its promissory
notes, signed by Cheshire, as security, in various sums.
Notes of that character to the amount of more than
nineteen thousand dollars were outstanding when
this action was commenced, and several of them,
aggregating more than sixteen thousand dollars, had
been given when the loan to Cheshire was made by
the plaintiff. The Warren County Bank denies that
the plaintff has any interest in the capital stock in
question, and claims a lien thereon to secure the land
and cattle company notes, paramount to any right
thereto which the plaintiff may have. That claim is
based on a section of the by-laws of the defendant
bank, which is as follows: "Sec. 4. Transfer of Stock.
The stock of the bank shall be assignable only on the
books of the bank, subject to the provisions and
restrictions of the act under which the bank is organ-
ized; and a transfer book shall be kept, in which all
assignments and transfers of stock shall be made; and
no transfer of stock shall be made without the consent

of the board by any stockholder who shall be liable to the bank, either as principal debtor, or otherwise, and the bank shall have a lien upon all stock owned by any person, as security for any indebtedness due the bank. Certificates of stock signed by the president and cashier shall be issued to stockholders upon the payment of the full par value thereof." The district court rendered judgment against Cheshire, and in favor of the plaintiff, for three thousand four hundred and eighty dollars, attorney's fee, and costs, and against Cheshire, and in favor of the Warren County Bank, for nineteen thousand, four hundred and seventy-six dollars and fifty-four cents, with attorney's fees and costs, and decreed the lien of the plaintiff on the stock in question to be paramount to that of the Warren County Bank, and ordered the sale of so much of it as should be needed to satisfy the judgment of the plaintiff, and directed that the remainder, if any, be applied on the judgment of the Warren County Bank against Cheshire.

It is admitted, or fairly shown by a preponderance of the evidence, that no copy of the by-law upon which the appellant relies, was posted in its principal places of business, or elsewhere, until after the twenty-second day of September, 1892; that no officer or agent of the plaintiff, who was concerned in making its loan to Cheshire, had any actual knowledge or notice of the by-law when the loan was made; and that actual notice of the by-law was not given to any agent whose knowledge is chargeable to the plaintiff, prior to the day stated. Some claim is made to the effect that the plaintiff should be charged with knowledge of the by-law, because it had for several years before the transfer to it of the stock in question, held other stock as collateral security, and had voted it, and otherwise treated it as owner. It is true it had held such stock as security for loans made, and had received dividends

on it, but the evidence does not satisfy us that such stock was voted before the loan to Cheshire was made by the plaintiff. We do not find sufficient ground for concluding that the plaintiff had any actual notice of the by-law until noon of September 22. We are not unmindful of the fact, that persons who had been officers of the plaintiff, had also been connected officially with the Warren County Bank, and knew of the by-law. But it does not appear that any of those persons had anything to do with the making of the loan in question, and there is nothing in the record that would justify us in holding that the knowledge they at one time had, should be imputed to the plaintiff, when the loan to Cheshire was made. On the twenty-first day of September, 1892, John Cheshire was insolvent, and gave to the appellant security for the amount he owed it personally, and then for the first time, informed several of its directors, that he had transferred the stock in question to the plaintiff. During the next day some of the directors informed the plaintiff of the by-law, and of the claims made under it. Prior to that time, the plaintiff had not caused the transfer to it of the stock to be entered on the books of the appellant, but in the afternoon or evening of that day, an entry was made upon the stub of stock certificate No. 72, in the stock book of the appellant, as follows: "Indianola, Iowa, September 22, 1892. I hereby accept notice that the Des Moines National Bank, of Des Moines, Iowa, holds this certificate, transferred to them as collateral security. [Signed] F. H. Cheshire, Cashier." This was the first formal notice of the transfer given by the plaintiff, but it was known to the cashier of the appellant, when first made. It does not appear that any other officer of the appellant, excepting John Cheshire, knew of the transfer, until informed of it in the evening of September 21, as stated. In October following, certificate No. 72 was

surrendered, and certificate No. 94 was issued in lieu of it, to the "Des Moines National Bank, Trustee," but dated September 22, 1892. The new certificate, like the old one, showed that the stock was held subject to the articles of incorporation and by-laws of the appellant. The board of directors of the appellant never consented to the transfer of the stock, and some of the directors, in the evening of September twenty-first, and in the morning of the twenty-second, before the notice of the transfer was entered by the cashier, directed him not to transfer, on the books of the bank, stock of any shareholder who was liable on any indebtedness to the bank. We do not consider the transactions which occurred after December, 1891, when stock certificate No. 72, was transferred to the plaintiff, entitled to much weight in determining the rights of the parties to this appeal. The material question is, what interest in the stock which the certificate represented, was acquired by the plaintiff at the time of the transfer?

The laws of the state, under which the Warren County Bank was incorporated, gave to it the power "to establish by-laws, and make all rules and regulations deemed expedient for the management of their affairs, in accordance with law." Code, section 1059, sub-division 7. The articles of incorporation of that bank, do not in terms, authorize a by-law like the one in question, but contain the following: "The board of directors shall have power to make and adopt such by-laws as may be necessary for the proper conduct of the business of this corporation." Much is said in argument in regard to the power of the board of directors to establish the by-law in question. What its general effect upon the stockholders, who do not have actual knowledge of it, would be, we need not determine. John Cheshire was a director of the bank, and was present at the meeting of the board of directors, at the time the by-law was adopted, in March,

1884. He was, at the same meeting, elected president, and held that office until after the transaction in question occurred. He must, therefore, be held to have had knowledge of the by-law, when the indebtedness for which he became surety, and when that to the plaintiff, were incurred. It was held in *Bank v. Haney*, 87 Iowa, 106 (54 N. W. Rep. 61), that a by-law which provided that no transfer of stock should be made by any stockholder, who should be liable to the bank, as principal debtor or otherwise, without the consent of the board of directors, and a certificate of stock which recited that it was transferable only on the payment of all liabilities, together constituted a valid contract, by which the bank was given an equitable lien upon the stock, for the liabilities of the stockholder to whom the certificate was issued. The certificate in question did not, in terms, refer to liabilities of the person to whom it was issued, but recited that it was subject to the articles of incorporation and by-laws of the bank. As Cheshire had actual knowledge of the by-law under consideration, the effect of that, and the certificate, was to make a contract, by which the bank was given a lien upon the stock which the certificate represented, valid as between the bank and Cheshire, for liabilities incurred after the certificate was issued. See *Jennings v. Bank*, 79 Cal. 323 (21 Pac. Rep. 852); *Van Sands v. Bank*, 26 Conn. 144; *Morgan v. Bank*, 8 Serg. & R. 73; Ang. & A. Corp., section 342.

Section 1078 of the Code, provides that "the transfer of shares is not valid, except as between the parties thereto, until it is regularly entered upon the books of the company, so as to show the name of the person, by, and to whom transferred, the number or other designation of the shares, and the date of the transfer." This provision is for the benefit of the corporation. *Bank v. Wasson*, 48 Iowa, 339. It is also for

the benefit of any one who may desire to inspect the record for which it provides. *Ft. Madison Lumber Company v. Batavian Bank,* 71 Iowa, 273 (32 N. W. Rep. 336). The transfer of shares is valid as between the parties to it, and the general rule applicable to such transfers is, that the transferee takes the stock free from all liens of which he has no actual knowledge, and no actual or constructive notice. *Driscoll v. West, Bradley & Cary Manuf'g. Co.,* 59 N. Y. 96; *Bank v. Pinson,* 58 Miss., 421; *Brinkerhoff-Farris Truss & Sav. Co. v. Home Lumber Co.,* (24 S. W. Rep. 129). Certificates for such shares of stock are not negotiable instruments. *Clark v. American Coal Co.,* 86 Iowa, 436 (53 N. W. Rep. 291); *Hammond v. Hastings,* 134 U. S. 401 (10 Sup. Ct. Rep. 727). But shares are transferred in the ordinary course of business, substantially as was the certificate in controversy. *Courtright v. Deeds,* 37 Iowa, 503. That certified that John Cheshire was "the owner of thirty shares of capital stock of the Warren County Bank, subject to its by-laws and articles of incorporation." No statute of this state gave to the bank a lien upon the stock for liabilities of the stockholder. There was nothing in the certificate to apprise the plaintiff that such a lien was authorized, or might be claimed. All it contained of a nature to put the plaintiff upon inquiry, was the reference to the articles of incorporation and by-laws which we have quoted. The articles were silent as to the matter, and no copies of the by-laws had ever been posted as required by statute. That provides that "a copy of the by-laws of the corporation, with the names of all its officers appended thereto, must be posted in the principal places of business, and be subject to public inspection." Code, section 1076. This provision is for the benefit of the public, and it was the duty of the defendant bank, to comply with it, for the protection of persons who might

be affected by the by-laws. Had a copy of them been posted as required, constructive notice of their contents would have been given; but had the plaintiff visited the places designated by statute, to ascertain the restrictions, if any, imposed by the by-laws upon the transfer of the stock, it would have found nothing. The notice of the by-laws required by statute not having been given, there was no constructive notice of them; and, as we have seen, the plaintiff had no actual knowledge of the restriction in question. At most, the by-laws created a secret lien in favor of the Warren County Bank, and such liens are not favored by law. Having neglected to give notice of its right to a lien in the manner pointed out by statute, the appellant should not be permitted to enforce it against a good-faith purchaser for value. We have no occasion to determine whether certificates of stock are personal property within the meaning of our recording act. The failure of the appellant to post a copy of its by-laws as required by law, is sufficient to defeat the enforcement of the lien which they gave, as against the appellee.

A note of the land and cattle company for two thousand dollars, was given after the original loan of December 1891, was made by the appellee; but that was before the renewal note upon which this action is founded was given. Therefore, we are not required, to decide what right the appellant might have acquired by accepting Cheshire as surety, after the transfer of stock to the plaintiff was made, and before notice of it was given.

Appellant has cited numerous authorities which are claimed to support a conclusion contrary to that reached by us. We have examined them, and find that most, if not all of them, were based upon facts materially different from those involved in this case. Some were controlled by legislative enactments, and in

others, the form of the certificate or the endorsement thereon, was of a character to give actual notice to the person to whom it was transferred, of the lien of the corporation.

What we have said disposes of the questions material to a determination of this appeal. The decree of the district court is AFFIRMED.