THE DES MOINES LOAN AND TRUST COMPANY, Appellant, v. THE DES MOINES NATIONAL BANK.

**Corporation Stock:** WAIVER OF LIEN: *Estoppel.* In an action, by a corporation, to enforce a lien on shares of its capital stock, under a by-law providing that no transfer of stock should be made when the registered holder is indebted to the company, defendant testified that he told officers of the plaintiff company, that he was about to make a loan on certain stock, and asked information as to its value, and that no claim of lien was then made. Plaintiff's officers testified, that they had no recollection of any such disclosure   The holder of the stock testified, that he told an officer of plaintiff, that he was about to pledge the stock, and that no lien was asserted at the time.   The stock, so transferred, was presented to plaintiff, as notice of the transfer, and an indorsement made on the stubs in the stock-book, stating the stock was held by defendant as collateral. *Held.* that plaintiff was estopped from now claiming any lien under the by-law.

SAME. Where the holder of stock assigned the same to defendant as collateral, the corporation being notified thereof, but no actual transfer was made on the corporation books, and afterwards the stock was assigned to the corporation as security for the registered holder's indebtedness, the corporation having had actual notice of the transfer to the defendant, cannot maintain a superior claim to the stock, on the ground that no transfer was formally made on the books, as required by a by-law providing that no transfer shall be valid unless so made.

*Appeal from Polk District Court.*—HON. S. F. BALLIET, Judge.

SATURDAY, APRIL 11, 1896.

ACTION in equity to determine the right of the parties to eighty shares of the preferred capital stock of the plaintiff corporation, evidenced by certificates Nos. 31, 32, 33, and 34, for twenty shares each, issued to L. W. Goode. The district court found for the

defendant, and entered judgment dismissing plaintiff's petition. Plaintiff appeals.—*Modified and affirmed.*

*Read & Read* for appellant.

*Dudley & Coffin* for appellee.

GIVEN, J—I. Plaintiff claims a first lien upon the stock in dispute, as security for certain indebtedness of L. W. Goode, to it, by virtue of a provision in its by-laws, as follows: "No transfer of the stock, unless made upon the books of the company, shall be valid and binding upon the association, and no transfer of the stock shall be made, when the registered holder thereof is indebted to the company, until such indebtedness is fully paid." Defendant claims a lien upon said shares of stock, by virtue of an assignment of said certificates to it, by L. W. Goode, as security for a loan of six thousand dollars, made to him. Defendant denies that plaintiff was ever entitled to the lien claimed, and alleges that, if it ever was, it waived the same, and is now estopped from asserting it as against the defendant. It is not questioned but that the plaintiff corporation had the right to provide for such a lien. On this subject, see *Bank v. Haney*, 87 Iowa, 101 (54 N. W. Rep. 61), and *Des Moines National Bank v. Warren County Bank*, 97 Iowa, 204 (66 N. W. Rep. 154). Defendant contends that plaintiff had no lien, for the reason that the by-law relied upon was not in force, and that plaintiff had no indebtedness against Mr. Goode, to which such a lien would apply.

In the view we take of the case we do not determine these questions. Let it be conceded that said by-law was in force, that there was an indebtedness, and that plaintiff did have a lien: we think it fairly appears that it waived that lien, and, under the facts,

should be held to be now estopped from asserting it as against the defendant. There is no dispute but that, after Mr. Goode had applied to the defendant for a loan, with said stock as security, and before the loan was made, Mr. Wellslager, president of the defendant corporation, inquired of Mr. Wishard, president, and Mr. Casady, treasurer, of the plaintiff corporation, as to the value of the capital stock of the plaintiff corporation. Defendant contends that, in these interviews, Mr. Wellslager disclosed to both Mr. Wishard and Mr. Casady that his inquiry was in reference to the value of the preferred stock held by Mr. Goode, as collateral security for a loan that Mr. Goode was negotiating, and that neither of said officers made any claim to a lien upon said stock. Plaintiff does not deny that Mr. Wellslager did inquire of said officers as to the value of its capital stock, but denies that he disclosed to them that it was with reference to stock held by L. W. Goode, or with a view to receiving the same as collateral security for a loan to Mr. Goode. Mr. Wellslager testified concerning his interview with Mr. Wishard as follows: "I called to see him to consult him in regard to the value of the stock which Goode had offered as collateral. The conversation brought out the fact that my inquiries were with reference to its value as collateral security for a loan that Mr. Goode was negotiating. Wishard made no claim of any lien upon the stock. Prior to this conversation, I had a conversation with Wishard, with reference to the value of the common stock of the company, with reference to accepting a proposition from a holder of such stock to exchange for the bank's equity in some property. I made known to Mr. Wishard, at that time, why I sought the information. The holder of this common stock was not Mr. Goode." On cross-examination he stated:

"I think I disclosed the fact to both Wishard and Casady that my bank was going to make a loan.   *   *   *   I went to those gentlemen for the distinct purpose of inquiring the value of the stock, and not to ask their advice as to whether to make the loan or not. I did not, in fact, stop my inquiries when I got their statement as to the value. I wanted them to know for what purpose I was making the inquiry." He further stated: "Before making the loan to Goode, I called on Simon Casady, treasurer of the plaintiff company, and disclosed to him that the bank was negotiating a loan to Goode, and taking stock as collateral. Casady made no claim of lien upon the stock in favor of the company."

It is clear that Mr. Wellslager intended to be understood as testifying positively that he disclosed to both Wishard and Casady that the purpose of his inquiry was to determine whether to accept the stock from Goode as security for the loan. Mr. Wishard was examined on behalf of the plaintiff, prior to the examination of Mr. Wellslager. On cross-examination, Mr. Wishard testified in relation to the interview with Mr. Wellslager as to the value of the stock of the plaintiff company. An examination of his evidence, shows quite satisfactorily that it was the first interview that Mr. Wishard had in mind. He states that Mr. Wellslager said, "he was thinking of exchanging some real estate or property which they had." He says: "I don't recollect the conversation, so as to say whether Mr. Wellslager made specific inquiry as to the value of preferred stock and of common stock." He further states: "I never had any conversation with him about Goode's stock, to the best of my recollection. He did not say to me, in that conversation, that Goode had applied to the bank for a loan, and had tendered this stock, or was about to tender this stock, as security. My recollection is

that the conversation was more with reference to preferred stock than to common stock. * * * My recollection is that he said, 'We have some real estate here, and would like to convert it into something else; and I have an opportunity of putting some of it into your stock, and I want to get some idea of your business.' I don't think Wellslager ever had any conversation with me about Goode's stock. I do not think I mentioned anything about Goode's indebtedness in any conversation I had with Wellslager, or with reference to any lien had by the company upon it. I am now speaking more from what I suppose the conversation most likely was, than any recollection of the words used." It is apparent that Mr. Wellslager had two interviews with Mr. Wishard,—the first concerning the value of the common stock, and with the view of exchanging real estate for some of it with some person other than Goode. The second was evidently with reference to the value of the preferred stock, and with the view of determining whether to accept it as collateral security. Mr. Wishard, upon his cross-examination, seems to have either forgotten the second interview, or to have confused the two.

After Mr. Wellslager's examination, Mr. Wishard was recalled, and testified that Mr. Wellslager did not inform him that he was making inquiries with a view to making a loan to Goode on his preferred stock. He says: "He had one or two interviews with me relative to the value of the stock of the plaintiff company, and in one of the interviews he said he had been offered some stock for some real estate. To the best of my recollection, he never informed me that he was thinking of loaning money to Goode for any stock, either preferred or otherwise." Mr. Casady testifies that Mr. Wellslager inquired of him as to the value of the stock, and says: "So far as I recollect, the extent of his inquiries was as to the value of the stock. I

have no recollection of his stating what he proposed doing, or that he proposed making a loan." On cross-examination, he says: "I do not recall. He may have said so." The subject-matter of his second interview with Mr. Wellslager seems to have escaped the recollection of Mr. Wishard, and when it is remembered that he had no future interest in the subject of the inquiry, and that it was one such as were being frequently made, it is not surprising that the details of that interview should have escaped his recollection; and the same is true as to Mr. Casady, who states that he had several inquiries of different people concerning stock owned by Goode. Mr. Wellslager had a future interest in the subject of that interview, such as would tend to fix it upon his mind. It was evidently upon the confidence that he had in the value of the stock that he made the loan to Goode, and that confidence rested upon the information received from Wishard and Casady. While it is true that Wellslager need not have revealed the fact that his inquiry was made with a view to the loan to Goode, there was the same reason for his disclosing that purpose as there was for his informing Wishard, in the first interview, that he contemplated an exchange of real estate for stock. While it must be admitted that the evidence is conflicting upon this question, we think its weight is in favor of the conclusion that Mr. Wellslager disclosed to both Wishard and Casady that his inquiry was being made with a view to the loan to Goode, and that neither asserted any claim in favor of the plaintiff against the stock. We are somewhat confirmed in this conclusion by the testimony of Mr. Goode, wherein he says: "I talked with Jones [secretary of plaintiff] in connection with it. I went to Jones before I pledged it, and asked him, in case Wellslager asked about it, to give it a favorable send-off. I am also of the impression that I

saw Wishard, but I would not be so certain of that as
I am that I saw Jones." Mr. Goode further states:
"I never heard of any lien asserted, except as it came
out in connection with the request for the transfer of
stock to the company, on the sixth day of July, 1893."
It is our conclusion that, under the facts, the plaintiff
should be held to be now estopped from asserting a
lien upon the stock in question, under its by-laws.

II. On the fourteenth day of May, 1892, the
defendant loaned three thousand dollars to Mr. Goode,
and on May 21 following loaned to him another three
thousand dollars; taking his promissory notes there-
for, that are due and unpaid. At the same time
Mr. Goode assigned to the defendant said stock
certificates, as collateral security for the pay-
ment of said indebtedness. The defendant did not
then have any notice, constructive or otherwise, of
said by-law, nor any knowledge that the plaintiff
claimed a lien upon said shares of stock. On August
6, 1892, Mr. Newell, cashier of the defendant bank,
presented said certificates to the plaintiff's bookkeeper
who was then the only person in charge of plaintiff's
office. Mr. Newell says: "They were presented, not
to have them transferred to the defendant bank, but
to give notice, and have proper notice indorsed on the
books of the company, that they were held as secur-
ity. I did not at any time ask to have them trans-
ferred to the company. Upon the best information
that I can get, to have notice was all that was deemed
necessary. The person to whom I presented them did
not say anything about a lien of the company upon
the stock. I did not ask for anything of that kind."
The bookkeeper at that time made an indorsement
upon the stubs of said certificates as **follows**:
"8-6-'92. Notice received that the Des Moines
National Bank holds this certificate as collateral."
On the eighth day of July, 1893, Mr. Goode exe-

cuted to the plaintiff a writing, as follows: "I hereby assign, transfer, set over, and sell to the Des Moines Loan & Trust Company, Des Moines, Iowa, all of my stock in said company as collateral security for the payment of my indebtedness to said company, this 8th day of July, 1893." The transfer of this stock to the defendant was not entered upon the books of the plaintiff, as required by section 1078, of the Code, nor as provided in said by-laws. The plaintiff contends that it "merely vested in defendant such rights, and such rights only, as Goode possessed, to have the transfer made, which, of course, was subordinate to the lien reserved by the plaintiff." Our conclusion is that the plaintiff had not reserved any lien, and that, as it took the assignment of July 8, 1893, with knowledge of the prior assignment to the defendant, it took subject thereto. *Jennings v. Bank*, 79 Cal. 323, 21 Pac. Rep. 852, is cited, wherein, under a statute like our section 1087, it is said: "As against the bank, therefore, the assignee took a mere equity which must yield to the superior equity of the defendant." Again, we say that, at the time the defendant received its assignment, the plaintiff had no superior equity; it had no lien. In *Ft. Madison Lumber Co. v. Batavian Bank*, 71 Iowa, 270 (32 N. W. Rep. 336), also cited, it is held that the transfer of corporation stock is not valid, as against attaching creditors of the assignor without notice, unless the transfer is entered upon the books of the company. It is there said: "The transfer is valid if the parties before the court were the parties to the transfer, and otherwise not. This, at least, is the rule of the statute, and must be followed, unless some equitable consideration controls. If the attaching creditors of the transferrer had knowledge of the transfer, it may be that a court of equity would protect the transferree's rights. It has frequently been so held, but that question is not before us."

We think that, as the plaintiff took the assignment of July 8, 1893, with knowledge of the prior assignment to the defendant, and without asserting any claim or lien upon the stock, or making any objection to the transfer to the defendant, the equities are with the defendant, and the plaintiff should not be held to have a superior claim, under said assignment of July 8, merely because the transfer to defendant had not been entered upon the plaintiff's books. As the assignment to defendant was conditioned for the payment of Goode's indebtedness to it, the subsequent assignment to the plaintiff carried whatever interest Goode had in the stock. If the stock was more than sufficient to satisfy the debt of Goode to the defendant, the plaintiff is entitled to that surplus under the assignment to it; that assignment being valid, as between the parties, though the transfer was not entered upon the books. The decree of the district court will be so modified as to provide for the sale of the stock and the application of the proceeds to the payment of the indebtedness of Goode to the defendant, and of any surplus that may remain to the payment of his indebtedness to the plaintiff.— MODIFIED AND AFFIRMED.