ELIZABETH S. BARRETT *vs.* CHARLES A. KING & another.

Suffolk.    March 20, 1902. — May 22, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Corporation*, By-laws, Stockholders.    *Conversion.*

In an action against a corporation for an alleged conversion of the plaintiff's shares of stock therein by refusing to issue a certificate to the plaintiff, it appeared, that the following was a by-law of the corporation, which was printed upon its certificates of stock: "No stockholder shall sell or otherwise dispose of the whole or any part of his stock unless he shall, at least thirty days previous thereto, have offered in writing to sell the same to the board of directors upon the same terms and for the same price as he shall have been offered by his prospective purchaser, and such offer to said directors shall not have been accepted within that period." The shares in question had been transferred to the plaintiff by a stockholder without first offering them to the directors or otherwise complying with the by-law. *Held*, that the by-law was lawful, at least between the plaintiff and the corporation, and prevented the defendant's refusal to transfer the shares from being a conversion, if otherwise it would have

been.　*Whether,* if trover can be extended to such a case, any one but the legal owner could be regarded as having the necessary present right of possession, *quære.*

TORT for the alleged conversion of twenty shares of the capital stock of the Continental Brewing Company against Charles A. King and that corporation.　Writ dated July 3, 1899.

In the Superior Court *Hopkins,* J. ordered a verdict for the defendants ; and the plaintiff alleged exceptions.

The face of the certificate for the shares in question contained the following : " This Certifies that William A. Holmes, of Boston, Mass., is the owner of twenty (20) Shares of the capital stock of the Continental Brewing Company, and said shares are transferable only in person, or by attorney duly constituted, on the books of the Company on the surrender of this certificate, duly executed, and are only transferable in accordance with the By-Laws of the Company which are hereon indorsed, and with such other By-Laws rules and regulations as the stockholders shall for such purpose ordain and publish."

On the back of the certificate were the following extracts from by-laws :

" Section 2.　No transfer of any stock of this Corporation shall be of any effect as concerns the Corporation until the certificate therefor has been duly executed and surrendered for cancellation, and the transfer has been registered upon the books of the Company."

" Section 4.　No stockholder shall sell or otherwise dispose of the whole or any part of his stock unless he shall, at least thirty days previous thereto, have offered in writing to sell the same to the Board of Directors upon the same terms and for the same price as he shall have been offered by his prospective purchaser, and such offer to said directors shall not have been accepted within that period.

" In case any stock so offered under this provision of this By-Law is accepted by the Board of Directors, said Board may sell said stock, either in whole or in part, for a price not less than the market value of said stock, to any stockholder, or to any persons engaged in the business of bottling or of vending beer or ale or other malt beverage, or dealing in malt or malt extracts. If said offer to said directors shall not have been accepted within

said period of thirty days, no sale by said stockholder at a less price than the price mentioned in his said offer to the directors shall be valid, and no transfer shall in such case be made by the Company."

*S. L. Whipple & E. V. Grabill,* for the plaintiff.

*E. K. Arnold,* for the defendants.

HOLMES, C. J.   This is an action of tort for the conversion of twenty shares of stock in the Continental Brewing Company, by a refusal to transfer it to the plaintiff on the books of the company.   It may be assumed for the purposes of decision that the stock was purchased on the plaintiff's behalf, but it stood in the name of one W. A. Holmes, who indorsed the certificate and handed it over to the plaintiff as soon as he got it.   This certificate was expressed to be transferable only in accordance with the by-laws of the company printed upon it, and one of those by-laws forbade a disposition of the stock unless the stockholders, at least thirty days previous thereto, should have offered in writing to sell the same to the board of directors upon the same terms and the offer had not been accepted.   There was no evidence that Holmes had made such an offer and the judge of the Superior Court ordered a verdict for the defendant, subject to the plaintiff's exception.   If this course was right it is unnecessary to consider the various minor questions that were raised while the plaintiff's case was going in.

It is argued that the plaintiff is not within the by-law because she was an undisclosed principal and should be regarded as having had the legal title from the moment of the purchase with her money.   But we might as well talk about an undisclosed principal in a deed of land.   The corporation has nothing to do with undisclosed equities or undisclosed relations.   The only person whom it can recognize as owner is the one who appears as such upon its books.   *J. H. Wentworth Co.* v. *French,* 176 Mass. 442.   And if, after it has issued a certificate, some one else claims rights in the stock, it is entitled to require that person, before disturbing it, to establish his right in accordance with the lawful conditions which the certificate expresses.   We may observe that in the plaintiff's argument she is called an original subscriber, but that this would be inaccurate even if the argument were better than it seems to us.   Holmes purchased of

the defendant King. We do not perceive, however, that this fact is material on either side.

But it is said that if the plaintiff has to claim by virtue of Holmes's indorsement, then she has a legal title to the stock by transfer. For it is said that the by-laws do not purport to make invalid a transfer without a previous offer to the directors, and that if they do they are against public policy and void. As to the meaning of the by-laws we shall not spend argument. They certainly did not mean to leave the company and the directors liable to an action for refusing to carry out what they prohibit. As to public policy, we see nothing in the provision contrary to that, at least as between the plaintiff and the corporation. The law of West Virginia, under which the defendant corporation was organized, is not before us. Under the law of Massachusetts, the stipulations, considered as a contract between the corporation and Holmes, undoubtedly would be lawful. *New England Trust Co.* v. *Abbott*, 162 Mass. 148. And this decision goes far to sustain the by-law as such, by consequence. See *Feckheimer* v. *National Exchange Bank of Norfolk*, 79 Va. 80, 83. Furthermore, looking at the stock merely as property, it might be said that, so far as appears and probably in fact, it was called into existence with this restriction inherent in it, by the consent of all concerned. See *Braintree Water Supply Co.* v. *Braintree*, 146 Mass. 482, 488. This is not the case of a by-law attempting to cut down rights of property already acquired, against the will of some of the owners. The whole stock originally was issued to the defendant King in payment for the plant and he was desirous of keeping it in the hands of consumers, that is of liquor dealers. And this suggests a further consideration. Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership. Notwithstanding decisions under statutes, like *In re Klaus*, 67 Wis. 401, there seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm. In *Price* v. *Minot*, 107 Mass. 49, 60, no doubt was thrown on the validity of a by-law much more questionable than this.

We perceive no difficulty in the case except the somewhat academic question whether the by-law accepted by Holmes when he accepted the certificate operates only by way of contract and

should be pleaded as such, or whether it affects the character of the property itself as we have suggested. In our opinion it at least so far affects the character of the act relied upon as a conversion as to prevent its being a wrong. Therefore it is unnecessary to analyze the matter more nicely or to inquire whether, apart from the by-law and more general difficulties, Lowell, Transfer of Stock, §§ 11, 238, the plaintiff had such a legal title as to warrant an action of trover. It is settled that an assignee of a certificate of stock has a standing in a court of law to maintain assumpsit, *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, *Sargent* v. *Essex Marine Railway*, 9 Pick. 201, or an action on the case, *Hussey* v. *Manufacturers' & Mechanics' Bank*, 10 Pick. 415; and in *Bond* v. *Mount Hope Iron Co.* 99 Mass. 505, an action was maintained counting in trover and assumpsit but without consideration as to which was the proper form. As against the corporation the plaintiff would not be the legal owner even if she had a present right to become so. This action is for a conversion of the stock, not of the certificate. If trover can be extended to such a case, it would seem open to question whether any one but the legal owner could be regarded as having the necessary present right of possession. But this suggestion need not trouble us here.

*Exceptions overruled.*