HOWARD L. MASON et al., Appellants, v. MALLARD TELEPHONE COMPANY et al., Appellees.

No. 40876.

FEBRUARY 9, 1932.

W. H. Morling, for appellants.

A. J. Burt and A. J. Shaw, for appellees.

GRIMM, J.—In June, 1929, the plaintiff-appellants filed an action in equity in the District Court of Palo Alto County, Iowa, asking for a writ of mandamus to require the defendant telephone company to transfer, on its books, certain shares of stock. The defendants answered, alleging, among other things, that the plaintiffs had not complied with Article V of the Articles of Incorporation, requiring new stockholders to be approved by two directors. The court found for the defendants, and the plaintiffs appeal.

It appears from the record in this case that the defendant corporation was a local concern organized under the laws of the state of Iowa, created for the purpose of owning and operating a small telephone exchange in the town of Mallard. The plaintiff Mason was an original stockholder of the company, and for many years was its general manager. Subsequently, he was released from his position. At the time of said release, he was the owner of about 43 shares of stock in the company. He afterwards purchased a few more, and subsequently sought to sell them all to W. H. Daubendiek, the other plaintiff. Daubendiek was, at the time of the attempt to transfer the stock, connected with another telephone company, and not a stockholder of the company.

The Articles of Incorporation of the company contain, among other things, the following:

"Article I. Sec. 3. Powers. This corporation shall have all the rights and powers conferred by law on like corporations, may sue and be sued in its corporate name and have a corporate seal which it may alter at pleasure. This corporation shall have the power to make contracts, including such contracts as may be necessary to be made in the construction of telephone lines, tele-

phone stations, toll stations, and exchanges, and in general in carrying out and continuing the business of this corporation and in fulfilling the powers and rights defined in these articles of incorporation and this corporation shall have the power to rent, buy and sell such real and personal property as may in the judgment of the board of directors be needed in conducting and carrying on the business of the corporation, as in these articles defined, including the right to buy real estate for toll stations and telephone exchanges.

"Sec. 7. Object. The nature of the business to be transacted by this corporation shall be to acquire, construct, purchase, rent, own and operate telephone lines and telephone stations at a reasonable profit to the stockholders of this corporation. The cost of the service to be fixed by the board of directors.

"Article V. Sec. 5. Who may become stockholders. Any person may become a stockholder of this company and subject to the by-laws, rules and regulations, upon such terms as the board of directors may provide, provided such person be recommended by any two directors.

"Article VII. Sec. 3. Transfer of Stock. Shares of stock may be transferred from one owner to another, but no transfers shall be valid or binding upon the company until approved by the secretary. The certificate of stock must be returned to the secretary and a proper record of such transfer be made by him in the stock book of the company before his approval shall be given. And the transfers of stock shall not obligate the company to any expense by way of extensions of lines or otherwise."

No two members of the board of directors would approve the plaintiff Daubendiek's becoming a stockholder. The failure of the plaintiffs to secure the approval or recommendation of two directors of the company is the ground upon which the officers of the company refused to transfer the stock, as requested. While later, other questions were raised, nevertheless we find it unnecessary to deal with them.

I. We first consider the question whether the restriction contained in Article V, as hereinbefore set forth, is contrary to the statutes of this state, or whether contrary to the public policy of this state, and therefore void.

It will be noted that this is a corporation for profit.

Section 8341 of the Code of 1931, so far as material hereto, is as follows:

"8341. Powers. Among the powers of such corporations (corporations for pecuniary profit) are the following: * * * 4. To render the interests of the stockholders transferable."

It is strenuously urged, by the appellant that, because of this statutory provision, any restriction on the transferability of shares of stock is violative of the foregoing statute.

In the first place, it will be noted that shares of stock in a corporation are personal property, and without any statutory or other provision restricting the transfer thereof, may be transferred as any other personal property. Such being true, the foregoing quotation from Section 8341, so far as it authorizes the company to provide for the transfer of shares, adds nothing to the common law. Manifestly, every corporation has the right to make reasonable rules and regulations in reference to the manner in which its shares of stock shall be transferred, in so far as it affects the power of the company to properly maintain sufficient records of stockholders' rights. Such restrictions as the common one that the transfer of stock shall not be completed until duly transferred upon the books of the company are recognized by all the authorities as a proper restriction in behalf of the proper management of the corporation.

As a matter of practical operation, a corporation must know who owns its stock, so that dividends may be correctly distributed and necessary or proper notices may be given.

What is meant by the legislative pronouncement that the corporation shall have the power "to render the interests of the stockholders transferable?" If the Legislature had intended to provide that no restriction should be placed upon the transferability of stock, it might well have found unmistakable English with which to announce such an intention. It did not do so. It seems more reasonable to infer that, rather, the Legislature intended that the corporation might place reasonable restrictions upon the transferability of stock. This section has been in force since the Code of 1851. Since that time, this court has approved of restrictions in articles of incorporation. See

Dempster Mfg. Co. v. Downs, 126 Iowa 80. In that case, this court approved of a provision in the articles, as follows:

" 'The corporation shall have a lien upon the stock of any holder thereof for the amount of his liability to the corporation, and this lien shall not be discharged by a transfer of the stock except on a written resolution of the Board of Directors authorizing the transfer.' "

The court said, in speaking of the lien created by the articles of incorporation, as above specified:

"*Our statutes are silent on the subject,* but the powers which may be exercised by a corporation in effecting its objects are as broad and comprehensive as those of an individual unless expressly prohibited. * * * A similar provision, when embodied in articles of incorporation, is neither inconsistent with the statutes, nor opposed to public policy." (Writer's italics.)

Sections 8344 and 8345 of the Code of 1931 are as follows:

"8344. Filing or refusal to file. When articles of incorporation are presented to the secretary of state for the purpose of being filed, if he is satisfied that they are in proper form to meet the requirements of law, that their object is a lawful one and not against public policy, that their plan for doing business, if any be provided for, is honest and lawful, he shall file them; but if he is of the opinion that they are not in proper form to meet the requirements of the law, or that their object is an unlawful one, or against public policy, or that their plan for doing business is dishonest or unlawful, he shall refuse to file them.

"8345. Question of legality submitted. Should a question of doubt arise as to the legality of the articles, he shall submit them to the attorney-general whose duty it shall be to forthwith examine and return them with an opinion in writing touching the point or points concerning which inquiry has been made of him."

The law further provides that, under certain circumstances, articles of incorporation which are rejected by the Secretary of State may be referred to the Executive Council. The articles under consideration were approved and filed. A certificate of incorporation was issued by the state. The public authorities in

charge at that time did not find anything in the articles contrary to law or public policy. The state is not here making such claim now.

There are many obvious reasons why it may be to the interest of the stockholders of a corporation and not violative of any public right or policy that stockholders should have some measure of choice in taking in new stockholders. This right, of course, can only be exercised within reasonable limitations. As was said by Chief Justice Holmes in Barrett v. King, 63 N. E. 934 (Mass.):

"Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership. * * * there seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm."

Manifestly, control and management are important considerations in the matter of ownership of corporation stocks. In a small local company, such as the one under consideration, the personal equation might easily be of vast importance to the interested parties.

It is claimed that this company desired to construct and maintain an independent telephone exchange for the use of any of the stockholders of the company; but, however that may be, it clearly appears that those who organized the corporation determined to place certain restrictions upon the admission of new members into the corporation's circle of stockholders.

It will be noted that, as between existing stockholders, the transfer might be made with the single restriction that it should not be binding upon the company until approved by the secretary. See Section 3, Article VII, supra.

As to new stockholders, Section 5, Article V, specifically provides that a proposed new stockholder must first be recommended by two directors. This manifestly is not a complete restriction upon the alienation of stock. The plaintiff Mason in this case could transfer his stock to any one of the other stockholders without the approval of the board of directors. He would manifestly be required to make the transfer in accordance with the rules of the company so far as bookkeeping details are concerned, but it was not necessary to have the recommenda-

tion of two directors. Mason could not, however, sell his stock to a new stockholder and thus foist upon the other stockholders a new member unless the proposed new stockholder had the approval of two directors of the company. Manifestly, if the directors were not proceeding in accordance with the wish of a majority of the stockholders, such directors could be deposed, and others elected in their places. The control of the company remained primarily in the hands of the majority of the stockholders. The rule of the majority in stock is fundamental in corporation management.

In the last analysis, then, whether Mason might be permitted to sell his stock to Daubendiek would depend upon the action of a majority of the stockholders of the company, and in the meantime, Mason might sell his stock to any of the other stockholders of the company without securing the consent of any of the directors of the company.

Mason knew of the restrictions in the articles, and is presumed to have consented thereto when he purchased stock in the corporation. ·The articles are properly recorded, and Daubendiek is held to have known the provisions thereof before he contracted to purchase the stock.

The articles of incorporation (under the circumstances here) formed a contract between Mason and the other stockholders. He purchased his stock bound by the terms of said contract, unless the contract is void as against statutory provisions or public policy.

As previously stated, we find no statutory restrictions. How can the contract be held to be contrary to public policy? No satisfactory reason has been given. A stockholder in a corporation has some immunities not afforded partners. Properly there may be restrictions as well. The corporation is entitled to reasonable protection in the matter of admitting new members and in the matter of the manner in which its stock may be transferred. The fact that many large corporations have no restrictions as to memberships is not material. The public as such is not interested. Those who desire to do business with the corporation as a telephone company are not affected by the question before us.

The restriction under consideration was in the articles of incorporation when the company was organized. The plaintiff

was one of the original stockholders. In fact, it appears that the plaintiff was instrumental in the organization of the corporation. There is a distinct difference between a restriction in the articles of incorporation and one contained in the by-laws. This difference originated early in the history of corporations. See Weston's case, (1868) L. R., 4 Ch. (Eng.) 20. See also In re Bede Steam Shipping Co., (1917) 1 Ch. (Eng.) 123; In re Copal Varnish Co., (1917) 2 Ch. (Eng.) 349.

In Dempster Mfg. Co. v. Downs, 126 Iowa 80, the court had under consideration a set of articles of incorporation providing for a lien upon the stock of any holder for the amount of his liability to the corporation, and the court said, among other things:

"They (the articles) contain the terms of agreement between the company and its stockholders, and indicate the business to be transacted, and also the grant from the State of the franchise or right of forming the corporation and attaining the objects contemplated."

Speaking further in reference to the restriction referred to, the court said:

"A similar provision, when embodied in articles of incorporation, is neither inconsistent with the statutes, nor opposed to public policy. By accepting the stock in the corporation every stockholder assents to the terms and conditions found in the articles. Such lien is not prohibited, and may be created by the articles of incorporation. * * * The corporation is created by the adoption of the articles. These form the very basis of its existence. Everyone who deals with it or its stock is charged with knowledge of their contents."

See also Farmers' & Traders' Bank v. Haney, 87 Iowa 101; Des Moines National Bank v. Warren County Bank, 97 Iowa 204. Other similar cases might be cited.

In Casper v. Kalt-Zimmers Mfg. Co., 149 N. W. 754 (Wis.), that court had under consideration a provision in the articles of incorporation requiring an original stockholder to submit his stock to the board of directors before selling to an outsider. The court said:

"The personal element is as important in the make-up and

management of a corporation as it is in almost every other undertaking. Restrictions, therefore, reasonably protecting incorporators or stockholders in their interests by permitting them first to purchase stock offered for sale, should be held lawful as promotive of good management and sound business enterprise."

In Farmers' Mercantile & Supply Co. v. Laun, 131 N. W. 366 (Wis.), that court had under consideration articles of incorporation which contained provisions substantially to the effect that shares were not transferable except in pursuance of a vote of two-thirds of all of the outstanding shares, and this majority of shareholders might either consent to the transfer of the shares sought to be transferred or take the same over by paying for the same at par. The court said, among other things:

"A distinction must be observed between an agreement absolutely restrictive of sale or transfer, and one merely imposing conditions, such as first giving a refusal to the other shareholders, and also between those conditions, when created by contract between the shareholders and authorized by the articles, and when attempted to be imposed by a by-law upon an unwilling minority, or upon those who may assert that the by-law is beyond the charter power."

In Rychwalski v. Milwaukee Candy Co., 236 N. W. 131 (Wis.), in considering a case of this kind, that court approved of the Farmers M. & S. Co. v. Laun, 146 Wis. 252, 131 N. W. 366, and said:

"The object and purpose of such regulations, restricting in a degree, but not prohibiting, the transfer of shares, are familiar. It is sometimes necessary and often desirable that a corporation protect itself against the acquisition of shares of its stock by rivals in business, or other disturbers, who might purchase shares merely for the purpose of acquiring information which might thereafter be used against the interest of the company. Similar restrictions upon the transfer of shares are generally recognized and held valid, where they form part of the charter or articles of organization of the corporation, and are matters of contract between the shareholders."

In Longyear v. Hardman, 106 N. E. 1012 (Mass.), that court had under consideration certain restrictions in the articles of in-

corporation. It appears that the statutes of Massachusetts contemplate the imposition of restrictions upon the transfer of stock as within the power of the incorporators. The court quoted with approval from Barrett v. King, 181 Mass. 476, 63 N. E. 934, as follows:

"Stock in a corporation is not merely property. It also creates a personal relation analogous otherwise than technically to a partnership. * * * there seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm."

In Wright v. Iredell Telephone Co., 108 S. E. 744 (N. C.), that court had under consideration a provision in the articles, as follows:

" 'Shares of stock in this corporation shall not be transferred or sold, until said sale or transfer shall have been reported to the directors and approved by them.' "

The court said:

"We have found no statute in the laws of this state forbidding restrictions and limitations in the sale and transfer of stock in corporations. And it would seem that where the Legislature, in the exercise of its constitutional grant, or reservation (article 8, Sec. 1, Const.) has authorized the Secretary of State to issue certificates of incorporation and approve the application for charters, the provisions of such charters, not inconsistent with the Legislative policy and so approved by the Secretary of State, have, at least, the force and effect of a valid agreement, and binding as between the stockholders who take with notice of such provisions."

See also Barrett v. King, 63 N. E. 934 (Mass.).

In New England Trust Co. v. Abbott, 38 N. E. 432 (Mass.), the court said:

"It is manifest that a stockholder may make a contract with a corporation to do or not to do certain things in regard to his stock, or to waive certain rights, or to submit to certain restrictions respecting which the stockholders might have no power of compulsion over him."

From 4 Thompson on Corporations, 2d Edition, we quote two sections:

"Section 4135. The rule is well settled that a provision in the charter or articles of incorporation that no stockholder shall sell and transfer his stock either without the consent of all other stockholders, or that he will first offer it to the stockholders or to the corporation before selling to other persons, is binding on persons who become owners of the stock. These provisions, which really amount to agreements between the stockholders themselves, are not invalid as against public policy nor do they amount to an improper restraint of the power of alienation. There seems to be no objection to a corporation reserving to existing members the right to choose their associates. Such a provision justifies the refusal of the corporation to transfer the stock.

"Section 4136. It has been shown that the charter of a corporation may place certain restrictions upon the sale of stock. This amounts to no more than an agreement among the stockholders themselves, and being in the charter is notice to all persons dealing with the stock."

The appellant has cited, among others, the following Iowa cases which are claimed to be contrary to this ruling: Hershire v. First National Bank of Iowa City, 35 Iowa 272; Farmers & Merchants National Bank of Lineville v. Wasson, 48 Iowa 336; Des Moines National Bank v. Warren County Bank, 97 Iowa 204; Traer v. Lucas Prospecting Co., 124 Iowa 107.

In Farmers & Merchants National Bank of Lineville v. Wasson, 48 Iowa 336, and Des Moines National Bank v. Warren County Bank, 97 Iowa 204, the provisions are in the by-laws. A careful examination of the other authorities will disclose that they are not out of harmony with what is here being said.

Upon the whole record in this case, we conclude that the lower court properly ruled. The public policy of the state is governed by its statutes, and in the absence of a legislative expression, then by the decisions of the court.

As previously noted, there is no statutory prohibition in Iowa upon restrictions in articles of incorporation. The only statute on the subject has, inferentially at least, been passed upon by the court as not a restriction. We find no decisions of

this court holding such restrictions contrary to public policy or void.

The Mallard Telephone Company is a corporation organized for profit under the laws of the state of Iowa. It is apparent from the record that it is a small corporation, doing a limited business by way of maintaining a local telephone exchange. Those who created the corporation manifestly intended that the stock should be closely held, and while providing for a free sale of stock between stockholders, they provided a definite restriction upon the transfer of stock to outsiders.

The law recognizes the right of stockholders in organizing a corporation to protect themselves against invasion by parties who buy stock mainly for the purpose of ''boring from within.'' There is some evidence here tending to show Daubendiek to be interested in another telephone company operating in the territory. The directors may have refused recommendation for that reason. They may have had other reasons. It may be that the incorporators of this concern had other valid reasons for placing the restriction in the articles of incorporation. At all events, the restriction was a contract obligation between the original stockholders and binding upon them. It is binding on Mason.

We do not here have a case in which there is an absolute prohibition upon the transfer of stock, and we make no pronouncement concerning such a case.

We agree with the ruling of the lower court, and the cause must be, and is,—Affirmed.

WAGNER, C. J., and FAVILLE, ALBERT, and EVANS, JJ., concur.

MORLING, J., took no part.

KINDIG, J., dissents.