ST. PAUL NATIONAL BANK v. LIFE INSURANCE CLEARING COMPANY.[1]

January 7, 1898.

Nos. 10,749—(181).

**G. S. 1894, § 2799—Lien of Corporation upon Its Stock for Indebtedness of Stockholder—Waiver.**

G. S. 1894, § 2799, provides that the stock of any corporation organized under chapter 34, tit. 2, of said statutes, shall be deemed personal property, and be transferable only on the books of such corporation in such form as the directors prescribe; and such corporation shall at all times have a lien upon the stock or property of its members invested therein, for all debts due from them to such corporation, which may be enforced by advertisement and sale in the manner provided for selling delinquent stock. *Held*, that said section does not prohibit a corporation so organized from waiving its right by its acts, expressed or implied.

**Same—Bank—Substitution of Stock for Mortgage as Collateral Security for Debt—Mortgage to Corporation in Payment for Stock—Lien of Bank Superior to Statutory Lien of Corporation.**

The plaintiff bank held certain notes, secured by a mortgage on real estate, against D., who was a stockholder in the defendant corporation, but whose subscription was unpaid. Thereupon the bank, with D. and the defendant corporation participating in the arrangement, agreed that the bank should release its mortgage security upon the real estate, and the defendant accept the note of D., with his mortgage securing the same, upon the same real property, in payment (or as security) for the unpaid subscription of D. upon his said stock, the defendant corporation to issue its stock to D., to be by him delivered to the bank in lieu of the notes and mortgage it held against D., and as security for the indebtedness of D. to the bank. This transaction was completed, but the defendant did not at any time during the negotiations claim any lien upon the stock. *Held*, that the defendant corporation had waived its lien upon the stock so issued to D., and delivered to the bank, and that the rights of the bank in the stock were superior to those of the defendant.

Action in the district court for Ramsey county to enjoin defendant corporation from enforcing its lien, under G. S. 1894, § 2799, upon certain shares of its stock belonging to one Dorr and pledged

[1] Reported in 73 N. W. 713.

to plaintiff bank. The case was tried before Otis, J., without a jury, and the court found the facts substantially as stated in the opinion and ordered judgment that defendant first exhaust its real-estate mortgage security before resorting to a sale of the stock. From an order of the court denying its motion for a new trial plaintiff appealed. Reversed.

*William G. White* and *Stringer & Seymour*, for appellant.

*Munn & Thygeson*, for respondent.

In a transaction where an officer of a corporation is acting in his own interest or adversely to a corporation, the corporation is not chargeable with his knowledge. Bang v. Brett, 62 Minn. 4; Akers v. Rowan, 33 S. C. 451; Germania v. Boynton, 71 Fed. 797; Bank v. American, 143 N. Y. 559; Manhattan v. Forty-Second, 139 N. Y. 146; Farrington v. South, 23 N. E. 109; Moores v. Citizens, 111 U. S. 156; Wickersham v. Chicago, 18 Kan. 481; First National v. Christopher, 40 N. J. Law, 435; Santiago v. Merchants, 139 Mass. 332; Frenkel v. Hudson, 82 Ala. 158; Stevenson v. Bay City, 26 Mich. 44. To render the knowledge of the individual directors the knowledge of the board it must have been communicated to all of the directors. Mercantile v. Parsons, 54 Minn. 56; La Farge v. Bell, 22 Barb. 54; Third v. Harrison, 10 Fed. 243.

The assignee or pledgee of stock cannot acquire greater rights than his assignor had, and if the lien had attached to the stock, whether issued or unissued, he must take it subject to such lien. McCready v. Rumsey, 6 Duer. 574; President v. Smalley, 2 Cow. 770. In this case there was no waiver by the defendant of its lien. First National v. Hartford, 45 Conn. 22; Boynton v. Braley, 54 Vt. 92; Dobbins v. Walton, 37 Ga. 614; Jennings v. Bank, 79 Cal. 323; Bishop v. Globe, 135 Mass. 132; Hammond v. Hastings, 134 U. S. 401.

BUCK, J.

The plaintiff is a national bank organized under the laws of the United States. The defendant is a corporation organized under the laws of the state of Minnesota, for the purpose of insuring the lives of individuals. The articles of incorporation were acknowledged December 9, 1891, duly filed in the office of the register of deeds of

Ramsey county December 10, 1891, and the next day filed in the office of the secretary of state. These articles of the defendant corporation provided that it should commence business January 10, 1892.

One Russell R. Dorr was the promoter and organizer of the defendant corporation and its president. He subscribed for 42 (and other) shares, of $100 each, of the capital stock of this corporation, and when it was organized he was indebted to the plaintiff in the sum of $13,700, which was secured by certain mortgages upon real estate situated in Ramsey and Dakota counties. The defendant corporation refused to deliver the certificates of corporate stock to Dorr until he had made provision to secure the payment of the par value thereof in a manner satisfactory to it. He then negotiated with the bank for the release of the mortgages held by it, and, to induce it to do so, he stated that he would mortgage the property to the Insurance Clearing Company to secure the payment of said stock certificates, and that he would deliver to the bank, in lieu of its said securities released, the certificates of stock which the insurance company would issue to him upon its receiving the securities which the bank was asked to release. He also agreed that the bank might hold said certificates of stock, after their delivery to him by the insurance company, in lieu of, and in substitution for, the securities which the bank already held. To this the bank agreed; he explaining to the bank that the insurance company would, under these circumstances, deliver to him the certificates of stock, to be immediately pledged to the bank. This was done.

In order to enable Dorr to carry out this arrangement the bank duly released and discharged all of said mortgages, with the understanding between Dorr and the bank that such stock, when issued by the defendant, should take the place and stand in lieu of the mortgages. This was shortly before the complete organization of the defendant corporation; but as soon as it was organized, and in pursuance of the plan proposed, Dorr arranged with the defendant that it should accept, and it did accept, as the payment of the stock subscribed for by him, his note secured by mortgages upon the same real estate upon which Dorr had given mortgages to plaintiff bank, but which the bank had released under the proposed ar-

rangement. Thereupon defendant issued and delivered to Dorr certificates of stock, of which the 42 shares hereinbefore mentioned were a part; Dorr having executed and delivered to defendant his note for the amount of the purchase price of the stock and the mortgages upon the property upon which plaintiff had released its lien. Immediately, and evidently as a part of the same transaction, Dorr transferred and pledged these certificates of stock to the bank, to be by it held as security for Dorr's indebtedness to the plaintiff bank, as a substitute for the mortgages upon the real estate which it had released, and which certificates the bank still held.

At the time of the making and consummation of said arrangement between Dorr and the defendant the latter at all times had full notice and knowledge of the arrangement between the bank and Dorr, and of the use Dorr had agreed to make of said stock as a substituted security for the mortgages held by the bank, and the bank had full notice and knowledge of the fact that Dorr intended to and did procure the issuance of said stock to him upon his personal notes secured by said mortgages. Dorr has made default in the payment of his indebtedness to the bank and in the payment of his indebtedness to the defendant, and is insolvent.

The defendant claims a lien upon said stock superior to the lien of the bank, but did not make this claim until September, 1896, when it sought to enforce its lien under G. S. 1894, § 2799. This action was brought to enjoin the defendant's attempted foreclosure of said lien, unless the sale of said stock was made subject to the lien of the bank. The trial court found that the lien of the defendant was superior to the lien of the bank upon the 42 shares, and from an order denying plaintiff's motion for a new trial it appealed to this court.

It thus appears that the only question involved is, which has the superior lien or right, the plaintiff bank or the defendant corporation? The section of the statute above referred to makes the stock in any such corporation personal property, and transferable only on the books of the corporation in such form as the directors prescribe, and also gives the corporation at all times a lien upon the stock or property of its members invested therein for all debts due

from them to such corporation, which may be enforced by advertisement and sale, in the manner provided for the selling of delinquent stock. It is not contended that the defendant, by merely taking the mortgage security, thereby waived its lien. It does not appear that the stock was transferred to the bank upon the books of the defendant corporation, but this court has held that the rights of a corporation are not superior and paramount, in all cases, to those of the stockholders, simply because of their not registering or transferring the sale of stock on the books of the corporation. Prince v. St. Paul, 68 Minn. 121, 70 N. W. 1079. See, also, Cook, Stockh. § 532.

Whether the defendant has waived its lien upon the stock must be determined by the facts in the case. The court found as a fact that the defendant agreed to accept, and did accept, as payment for the stock subscribed for by Dorr, his note and mortgage, securing the same upon land which the bank had released from the lien of its mortgage, although the court also found that it was a device to evade the statute requiring stock to be paid for in cash,[2] the defendant having voted a nominal loan to Dorr to the amount of the notes and mortgages so taken, but that no money passed between them. But, as between the parties to the transaction, we think that the capital required of Dorr on his stock must be regarded as paid in by delivery to, and acceptance by, the corporation of the notes and mortgages as payment. The bank must have so understood the transaction, or else it would not have released its mortgage security upon Dorr's land, and permitted him to remortgage it to the defendant.

To permit the defendant to obtain all of the bank's security against Dorr upon an agreement to exchange securities, and still hold a lien upon the stock, which it consented to turn over and did turn over to the bank, seems unreasonable, and could never have been contemplated by the parties. It claims to have a lien upon all the 42 shares of stock held by the bank, and upon all of the land upon which the bank had mortgage security. This claim, if upheld, might be deemed very sharp practice, but it would seem

[2] See G. S. 1894, § 3415.

inequitable. Because the defendant and Dorr thought it necessary to go through some formal operation to evade the statute as to the necessity of paying in the capital to the defendant in cash, yet, if the defendant in fact accepted the notes and mortgages as payment of the capital stock to be paid in by Dorr, it is bound thereby, and its lien is waived or lost. We hold this upon the assumption that, as between the defendant and Dorr, he might pay in his stock in something besides money, if it was the equivalent thereof and accepted as such.

The case of Union v. Curtis, 35 Oh. St. 343, sustains this view of the case. The company was organized under a statute which provided that

" 'No company shall be organized under this act with a less capital than $100,000. The whole capital of such company shall before proceeding to business be paid in and invested in treasury notes or in stocks of the United States * * * or in mortgages or unencumbered real estate within the state of Ohio, worth double the amount loaned thereon.' "

A stockholder of the insurance company executed to the company his notes and mortgages in payment of his stock subscription, and it was held that, under the statute, the stock must be regarded as paid in, and the notes and mortgages as given for money loaned or invested by the company. The exact language of the court is as follows, page 350:

"Under this statute, as between the parties to the transaction, the stock must be regarded as paid in, and the notes and mortgages as given for money loaned or invested by the company. Such was doubtless the understanding of the parties at the time of the transaction. It is the same, in effect, as if the stock subscriptions had been paid to the company, and the money had then been loaned to the defendant on the mortgage security. The liability of the defendant on the mortgages is no less than that of any other borrower; nor do his rights as a stockholder stand on any better footing than those who paid for their stock, but borrowed nothing from the company."

Dorr does not complain of the transaction, and the defendant well knew of the manner in which Dorr was going to dispose of the stock. If it had rested solely upon this knowledge, a different ques-

tion, perhaps, might have arisen; but it accepted payment for this stock by taking his notes secured by a mortgage upon real property of Dorr. It is no answer to this to say that the statute gives the corporation a lien at all times for all debts of the stockholder. The corporation, by its voluntary act, may waive or release its lien. Cook, Stockh. § 531. And 2 Thompson, Corp. § 2340, says:

"Even where the charter required the consent of the directors to the validity of a transfer, it was held that such consent need not be obtained by a formal convocation of the board; but that, if it appeared that the assent of a majority of the directors had been given, and in the manner that the transfers of stock were frequently made, it would be sufficient."

In the case of National v. Watsontown, 105 U. S. 217, it was held:

"The statute of Pennsylvania, declaring that the stock of a bank shall be transferable only on the books in such manner as the by-laws shall ordain, and that no stockholder shall be authorized to transfer his stock until his debt is discharged or secured to the satisfaction of the directors, does not prohibit the bank from waiving its right, nor the cashier from acting for them, by an authority, either express or implied."

The trial court found as a fact that the defendant, after it became fully organized, agreed to accept the notes and mortgages as payment. This finding answers the contention of counsel for defendant that it did not, as such corporation, have knowledge or notice of the acts of its officers. It not only had notice of the intended transaction, but it actually participated in and received the fruits of it. If it intended to insist upon its lien upon stock, the proper time to have done so was when it took part in making the contract. It should then have given notice thereof to the bank, and not allowed the bank to part with its own securities in favor of the defendant without the slightest knowledge or suspicion that it was obtaining the stock of defendant loaded down with a lien for Dorr's debts to it. Good faith and fair dealing required this, and did not permit them to remain silent when they should have spoken. In the case of National v. Watsontown Bank, supra, the court uses this language, at page 223:

"When Tome made his claim on behalf of the Cecil National Bank for a transfer of the stock, if the appellee had intended to insist on its legal rights, and assert its lien, then was the proper time to do it; for it then, at least, had notice of the interest and the claim of the appellants. If it had done so promptly, the latter might still have had an opportunity to obtain other security, or to enforce by other means their claims against their debtors, who, although in default, do not appear to have been as yet in extremis.

"So far, however, from adopting this course, the Watsontown Bank pursued one exactly the reverse. It permitted the parties, by its actual exercise, to rest in the belief that their right to dispose of the stock for the purpose of paying the debt due them would not be questioned until the failure and assignment of Powell & Co. made any other resort useless; and, having induced them to alter their condition by reliance upon assurances which were equivalent to a declaration that it had no adverse claim, the appellee cannot now be permitted to assert a lien lost by its own laches, and the enforcement of which would operate as a fraud."

In the case of Des Moines v. Des Moines, 97 Iowa, 668, 66 N. W. 914, it was held:

"In an action by a corporation to enforce a lien on the shares of its capital stock under a by-law providing that no transfer of stock should be made when the registered holder is indebted to the company, defendant testified that he told officers of the plaintiff company that he was about to make a loan on certain stock, and asked information as to its value, and that no claim of lien was then made. * * * The holder of the stock testified that he told an officer of plaintiff that he was about to pledge the stock, and that no lien was asserted at the time. The stock so transferred was presented to plaintiff as notice of the transfer and an indorsement made on the stubs in the stock book, stating the stock was held by defendant as collateral. Held, that plaintiff was estopped from now claiming any lien under the by-law."

The case at bar is much stronger in favor of the superior rights of the plaintiff than the one last above cited. Even if the taking by defendant of the notes and the mortgages on the land should be regarded as a pledge instead of a payment, under the language found in the findings of the trial court, still as the defendant knew of the whole arrangement, participated in it and consented to it, and enjoyed the fruits of the transaction, without claiming a lien, it must

be deemed to have waived it, and it is therefore subordinate to the rights of the bank in such stock.

Order reversed.

MITCHELL, J.

I concur.  Inasmuch as the plaintiff bank and the defendant insurance company did not deal directly with each other, but each contracted with Dorr relative to its own interests, the arrangement among the parties may not be strictly a tripartite agreement.  But each dealt with Dorr knowing what the proposed arrangement was between him and the other party, and did what it did in order to enable him to carry out that arrangement.  The bank knew that the insurance company proposed to issue the stock certificates to Dorr if he would give it a first mortgage on the property on which the bank held a mortgage; and the bank, in consideration of its getting these certificates when issued, discharged its mortgage in order to enable Dorr to give a mortgage on the same property to the insurance company.  On the other hand, the insurance company knew that the bank was releasing its mortgage in order to enable Dorr to obtain his stock certificates, and in consideration of its getting these certificates, when issued, as security in place of the released mortgage, and that, when issued, Dorr would assign them to the bank for that purpose.

Upon these facts, I have no doubt but that the insurance company waived, in favor of the bank, its lien on the stock, unless such result was prevented by the fact that the bank knew that the insurance company was going to take a real-estate mortgage in payment or as security for the payment of the stock, and by the further fact, assuming it to be a fact, that this would be ultra vires the insurance company.  How much there would be in this point, if the insurance company was insolvent and the rights of its creditors were involved, it is not necessary to consider.  So far as appears, it is still a going concern and solvent, and, as such, I do not think it can raise any such point against the bank.

CANTY, J. (dissenting).

I cannot concur in the foregoing opinions.  Dorr had one contract with plaintiff, and another separate and distinct one with de-

fendant. Plaintiff and defendant entered into no contract with each other at all, and were strangers to each other in the different transactions in which plaintiff first released its mortgage to Dorr, then defendant took a mortgage from Dorr on the same property, and issued its stock to Dorr, and then plaintiff received the stock from Dorr as collateral security. Plaintiff knew of the arrangements that were about to be made between Dorr and defendant; defendant knew of the arrangements that were being made between Dorr and plaintiff; and there is as much reason for saying that plaintiff is estopped from denying defendant the full benefit of its contract with Dorr as there is for saying that defendant is estopped from claiming such full benefit. Defendant was not guilty of any fraud, deceit or concealment, took no undue advantage of plaintiff, and did not enter into any conspiracy with Dorr to cheat, defraud or deceive plaintiff. Then, where does the doctrine of estoppel come into the case? True, plaintiff released to Dorr its mortgage, and it may turn out that the collateral which it afterwards received in return is not as good security as the mortgage was. But if the plaintiff wanted to assist Dorr, and give him a chance to carry out his transactions, that is no concern of defendant.

But, whether plaintiff wanted to assist Dorr or not, it and its officers were sui juris; they were not lunatics, idiots or infants; defendant took no undue advantage of them; and there is no reason why defendant should be estopped from asserting its statutory lien on this stock. Plaintiff did not release its mortgage on condition that defendant should waive its statutory lien on the stock about to be issued by it to Dorr. Plaintiff was content to release its mortgage without communicating with defendant at all in regard to the matter, and to leave Dorr with his unincumbered title to make his own arrangements with defendant. It will hereafter be unsafe for one party to do business with another, knowing that the latter has business relations with strangers which may have any possible relation to, or connection with, the business about to be transacted between the parties. This case might have been different if, as a part of the transaction, defendant had transferred the stock on its books from Dorr to plaintiff, or if the parties had entered into a tripartite agreement.