## ARDMORE STATE BANK v. MASON.

No. 1113.  Opinion Filed November 14, 1911.

Rehearing Denied December 12, 1911.

(120 Pac. 1080.)

1.  **BANKS AND BANKING**—Banking Corporation—Stock—Transfer. A purchaser of bank stock may compel, by bill in equity, the transfer of the same on the books of the corporation, or he may sue in conversion and damages for the failure to so transfer.

2.  **PLEADING** — Demurrer — Demurrer to Pleading Good in Part. Where a general demurrer is filed to a petition, if any paragraph states a cause of action, the demurrer should be overruled.

3.  **BANKS AND BANKING**—Banking Corporation—Stock—Pledge— Notice of Sale. The statute requiring the pledgee, before the sale of pledged property, to give notice and sell same at public auction, was enacted for the benefit of the pledgor, and he may waive by stipulation, both the notice and the public sale, and in that event a private sale is valid.

4.  **SAME**—Stock—Pledge of Share—Lien of Bank on Stock—Priority. McL. owned ten shares, fully paid up, in the A. State Bank. On June 24th he was indebted to said bank for borrowed money in the sum of $2,000. On the same day he borrowed $5,255 from the F. State Bank, and secured the same by pledging, among other things, his ten shares of stock in the A. State Bank. On June 25th he paid in full his indebtedness to said A. State Bank, and from June 25th to July 8th he was not indebted to it in any sum whatever. On the latter date he borrowed $1,500 from the A. State Bank. During the time in which he was not indebted to said bank, actual knowledge was given to said bank of the pledging of his ten shares of stock to the F. State Bank, yet, notwithstanding such knowledge, the last loan of $1,500 was made. The

contract of pledge stipulated that upon default of payment of the principal sum the pledgee might sell the pledged stock without notice and at private sale. On November 12th plaintiff bought, at private sale, the said shares and thereafter presented the same to the A. State Bank, and demanded that the certificate be canceled and a new certificate be issued, and that the said shares be transferred on the books of such A. State Bank, which was refused on the grounds that McL., the original owner, and pledgor, was then indebted to said A. State Bank, and that said bank had a statutory lien on said stock for such indebtedness and also for the further reason that the by-laws of said A. State Bank prohibited a transfer of stock by its stockholders who were indebted to said bank either as principal or surety. **Held:**

First. That the statutory lien which the A. State Bank had against such stock on June 24th was discharged when the owner of such stock on June 25th, paid all his indebtedness to said bank; and

Second. That after June 25th and up to July 8th, when McL., the owner of such stock, was not indebted to said bank, he had a right to sell, assign, or transfer by way of pledge the said stock, and that the same was free from statutory lien; and

Third. That when said A. State Bank, with knowledge of the pledge, again made McL. a loan, it did so at its peril, and that it was not entitled to a priority lien on such stock as against the pledgee who had received such stock in hypothecation when there was no indebtedness to the issuing bank at the time when its second credit was extended to said McL., and that such subsequent loan to said McL. by said A. State Bank made its statutory lien subsequent and secondary to that of the pledgee of such stock; and

Fourth. The pledgee, by virtue of the stipulation between the parties, had a right to sell such pledged stock at private sale, without notice, on November 12th, and the purchaser became the equitable owner and entitled to the legal title to said stock by having the same transferred on the books of the said A. State Bank; and

Fifth. The by-laws of said bank which prohibited the sale of stock by a stockholder while indebted to the bank was made for the benefit of the corporation, and its provisions do not apply to **bona fide** purchasers of stock in good faith at pledgee's sale, especially when the corporation has actual knowledge of the pledge and such pledge was made at a time when there was no statutory lien on the pledged stock, and the indebtedness by which the bank now claims its lien was created after the stock was pledged.

(Syllabus by Robertson, C.)

*Error from District Court, Carter County; Stilwell H. Russell, Judge.*

Action by I. R. Mason against the Ardmore State Bank to compel the transfer on the books of the corporation of certain shares of stock purchased at pledgee's sale, and for damages. From a judgment for plaintiff, defendant brings error. Affirmed.

This action was tried to the court on an agreed statement of facts, which statement contained all the facts save and except one question, as follows, to wit: "Did the Ardmore State Bank have notice at any time between the date of June 24, 1908, and July 8, 1908, that Richard R. McLish had pledged his ten shares of stock represented by certificate No. 3, to the First State Bank?"—which issue was submitted to a jury and was decided in the affirmative, and thus declared that the Ardmore State Bank did have notice between the said dates that McLish had pledged his ten shares of stock, represented by certificate No. 3, to the First State Bank. Thereafter the court made its findings of fact and conclusions of law as follows:

"FINDINGS OF FACT AND CONCLUSIONS OF LAW.

"(1) The court finds: That the Ardmore State Bank is a corporation incorporated under the laws of the state of Oklahoma, with a capital stock of $25,000 paid up, and that the said bank was authorized by the State Bank Commissioner to do business on May 19, 1908, and that it opened for business at Ardmore on June 1, 1908.

"(2) That Richard R. McLish was one of the organizers of said bank, and on June 4, 1908, there was issued to him certificate No. 3, representing ten shares of the capital stock of the par value of $1,000.

"(3) That on June 13, 1908, the Ardmore State Bank loaned to the said Richard R. McLish $2,000, which was paid on June 25, 1908. That on July 8, 1908, the Ardmore State Bank made a second loan to the said Richard R. McLish in the sum of $1,500, which amount was due and unpaid, on November 12, 1908, at which time the plaintiff herein purchased the stock issued to the said Richard R. McLish by the Ardmore State Bank.

"(4) That a meeting of the directors of the Ardmore State Bank was held January 12, 1909, at which meeting a dividend of five per cent. was declared on the capital stock of said bank and the dividend on the $1,000 stock standing in the name of Richard R. McLish was not paid to this plaintiff because the

books of this bank showed said stock to be the property of the said McLish.

"(5) That a short time subsequent to January 12, 1909, the plaintiff presented to the president and cashier of the bank certificate No. 3, representing $1,000 of the capital stock of said bank issued to Richard R. McLish, and requested and demanded that said certificate be canceled, and, in lieu thereof, a new certificate be issued to this plaintiff by virtue of his having purchased this stock from the First State Bank of Ardmore on November 12th as aforesaid, and that the officers of the said bank refused to cancel said certificate and issue new certificate to plaintiff because they claimed to have a lien on the stock of the said Richard R. McLish by virtue of the fact that the said McLish was indebted to them, and, under the statute, they had a lien on said stock for such indebtedness.

"(6) That the said Richard R. McLish is now indebted to the Ardmore State Bank in an amount exceeding the book value and the market value or the par value of said stock.

"(7) That the plaintiff herein purchased said certificate of stock from the First State Bank of Ardmore, Okla., on November 12, 1908, who obtained the same from Richard R. McLish on June 24, 1908, as part security for a loan made to the said McLish by the First State Bank, and that the First State Bank held said stock until sold to the plaintiff herein as pledgee of the said McLish.

"(8) That the said Richard R. McLish on the 24th day of June, 1908, made, executed, and delivered to the Ardmore Loan & Trust Company his promissory note for the sum of $5,250 to become due and payable October 1, 1908, as part collateral of which he pledged the ten shares of stock in question, and that in said note the said McLish gave the legal holder of said note full power and authority to sell said ten shares of stock of the Ardmore State Bank, or any portion thereof, at public or private sale, at the option of the holder, on the non-performance of the obligation expressed in said note, and without advertising the same, and otherwise giving notice.

"(9) The court further finds that the question as to whether the Ardmore State Bank at the time it made its second loan of $1,500 to Richard R. McLish on July 8, 1908, had notice that McLish's stock was pledged to the First State Bank, could not be agreed upon by the plaintiff and defendant; the plaintiff contending that the Ardmore State Bank had notice and the defendant denying this. The question of fact was left to a jury, who,

after hearing the testimony of the respective cashiers of each bank, found that Harold Wallace, cashier of the Ardmore State Bank, had been notified by J. B. Boone, cashier of the First State Bank, that this stock was pledged to the First State Bank, and the court further finds that the Ardmore State Bank by reason of this notice to its cashier is chargeable with such notice.

"(10) The court finds that the original indebtedness of Mc-Lish to the defendant bank existing on the 24th day of June, 1908, was paid by McLish on the 25th day of June, 1908, by check on the First State Bank of Ardmore, and that McLish had obtained the funds upon which this check was drawn by obtaining a loan from the First State Bank for which he gave a mortgage on various and sundry chattels, and, in addition thereto, pledged his ten shares of stock in the Ardmore State Bank.

## "Conclusions of Law.

"The court holds as the questions decisive of the case that the First State Bank, the holder or the McLish note, had a right to offer for sale the ten shares of McLish stock at private sale under the authority contained in the note, and that I. R. Mason was a *bona fide* purchaser of same for value, and is legally entitled to have said shares transferred to him on the books of the bank.

"The court holds that the lien of the Ardmore State Bank by reason of McLish's first indebtedness of $2,000 was removed by the payment of the indebtedness, and that in making the second loan of $1,500 to McLish, by which the defendant bank seeks to assert its lien, was made by the bank at its peril, in view of its knowledge of the pledging of the stock and being chargeable with that knowledge, it virtually waived its right to an assertion of its statutory lien.

"The court holds that the provisions giving the issuing bank a lien upon the stock does not mean a priority of lien as against a pledgee who has received the stock in hypothecation when there is no indebtedness to the issuing bank at the time of the hypothecation, and when its credit was extended to its stockholder at a time when his stock was known to be so hypothecated elsewhere. And such subsequent loan to its stockholder by the issuing bank made its lien secondary.

"The court further holds that the provision in article 12 of the by-laws of the defendant bank, namely, 'no transfer of stock of this association shall be made by any stockholder who shall be liable to this bank, either as principal debtor or otherwise, without the consent of the board of directors, and certificates

of stock shall contain, upon their face, notice of this provision,'
does not affect the rights of pledgee who receives the stock when
there is no liability to the issuing bank and the rights of pledgee
being not affected, if he received the stock when there is no
liability a subsequent loan by the issuing bank, before the sale of
the stock, cannot affect the purchaser, as the purchaser became
subrogated to all the rights of the pledgee.

"The court holds that the section of the state bank law reg-
ulating how a pledged stock should be sold when in the hands of
a pledgee clearly means a public sale, but, as a pledgor at a time
when he·was not indebted to the issuing bank stipulated that the
pledgee could sell said stock at public or private sale at the option
of the holder on the nonperformance of the obligations expressed
in said note, and without advertising same or otherwise giving
notice, it was a waiver which the pledgor had a right to make, and
the stock being sold at private sale, the purchaser obtained a
good title, and one which the issuing bank cannot complain of
in view of its notice that the stock was hypothecated before it
made its loan of July 8th, and all the resulting injury such notice
put upon it.

"The court therefore holds that the prayer of the petitioner
should be granted, as it is clearly warranted by the facts and
pleadings in the case.
                    "S. H. RUSSELL, District Judge."

Thereafter, in accordance with such findings and conclu-
sions, the court entered judgment in favor of plaintiff, requiring
defendant to transfer such stock on its books and to issue new
certificate of stock to plaintiff as of date November 12, 1908,
to the end that said plaintiff might have the dividends and other
benefits growing out of said stock after November 8, 1908, to
which judgment defendant excepted, and brings this appeal to
reverse the same.

*H. C. Potterf* and *E. A. Walker,* for plaintiff in error.

*J. V. Cabell* and *J. A. Bass,* for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts
as above). For convenience plaintiff in error will hereinafter be
designated as defendant and defendant in error will be desig-
nated as plaintiff. Defendant relies upon five assignments of
error for reversal, to wit:

"(1)  The court erred in overruling defendant's motion to strike out plaintiff's prayer for relief in its petition wherein he prayed that defendant be compelled to transfer the ten shares of stock to him, and accrued dividends and for damages.

"(2)  The court erred in overruling the defendant's general demurrer to the original petition of plaintiff.

"(3)  The court erred in overruling the defendant's demurrer to plaintiff's reply to defendant's first amended answer.

"(4)  The court erred in overruling the plaintiff in error's motion for judgment on the pleadings.

"(5)  The court erred in overruling the motion of the plaintiff in error for a verdict after all the evidence had been heard."

Did the court err in refusing to strike out the prayer of plaintiff's petition? The striking out of the prayer would have had the effect of dismissing the action, or would have required an amendment to the petition asking for different relief. Defendant insists that the action, in effect, is one of mandamus, and, being such, is not a proper remedy in such a case as stated in the petition. With this contention of counsel we cannot agree. This action has few of the characteristics of mandamus, although the relief sought might possibly lead one to such an inference. A purchaser of bank stock has a right to compel by bill in equity the transfer of the same on the books of the corporation, or he may sue in conversion and damages for the failure to so transfer. Plaintiff elected to pursue the former course and the authorities are practically unanimous in support of the rule above announced.

"Stated generally, equity will compel the corporation to register a transfer of shares on its books and to admit the transferee to the rights of a shareholder, where he has become the purchaser of shares, and the certificate has been regularly transferred and delivered to him by the customary indorsement in blank." (10 Cyc. 605.)

Also:

"Equity will under such circumstances compel the corporation to transfer on its books shares of stock to the owner of the equitable title, and to issue him certificates for the same." (*Id.*)

In *Cushman v. Thayer Mfg. Co.,* 76 N. Y. 365, 32 Am. Rep. 315, where the same question was involved as the one under consideration, the court said:

"The right of the plaintiff to maintain this action depends upon the question whether an equitable action will lie to compel a transfer of stock by a corporation to the owner of the same, or the plaintiff must seek a remedy by an action at law for damages. The latter action is frequently of no avail, and does not always afford complete and full redress. It is easy to see that a party may have become the owner or purchaser of stock in a corporation, which he desires to hold as a permanent investment, which may be at the time of but little value—in fact without any market value, whatever—and its real worth may consist in the prospective rise which the owner has reason to anticipate will follow from facts within its knowledge. To say that the holder shall not be entitled to the stock because the corporation without any just reason refuses to transfer it, and that he shall be left to pursue the remedy of an action for damages, in which he can recover only a nominal amount, would establish a rule which must work great injustice in many cases, and confer a power on corporate bodies which has no sanction in the law. A court of equity will enforce a specific performance on a contract for the sale of real estate, and compel the execution of a deed by the vendor to the vendee, although an action at law may be brought to recover damages for the breach of the contract. Such a case bears a striking analogy to the one now presented, and the same principle is manifestly applicable where the remedy at law is inadequate to furnish the proper relief."

See, also, *Bank v. Seton,* 1 Pet. 299, 7 L. Ed. 152; *Telegraph Co. v. Davenport,* 97 U. S. 369, 24 L. Ed. 1047; *National Bank v. Watsontown Bank,* 105 U. S. 217, 22 L. Ed. 1039; *Stafford v. Produce Bank,* 61 Ohio St. 160, 55 N. E. 162, 76 Am. St. Rep. 371; *Jennings v. Bank of Calif.,* 79 Cal. 323, 21 Pac. 852, 5 L. R. A. 233, 12 Am. St. Rep. 145; *Hotchkiss v. Bank, Conn.,* 68 Fed. 76, 15 C. C. A. 264; *Just v. Bank,* 132 Mich. 600, 94 N. W. 200; *Curtice v. Crawford,* 118 Fed. 390, 56 C. C. A. 174.

The refusal of the court, therefore, to strike out the prayer of plaintiff's petition was not error.

Entertaining this view of the case, it therefore necessarily follows that the second assignment of error urged by the de-

fendant is untenable, for without doubt the petition in this case is good as against a general demurrer.

"Where a general demurrer is filed to a petition, if any paragraph states a cause of action, the demurrer should be overruled." (*Hurst v. Sawyer,* 2 Okla. 470, 37 Pac. 817; *City of Guthrie v. Harvey Lbr. Co.,* 5 Okla. 774, 50 Pac. 84; *Hanenkratt v. Hamil,* 10 Okla. 219, 61 Pac. 1050; *Cockrell v. Schmidt,* 20 Okla. 207, 94 Pac. 521, 129 Am. St. Rep. 737; *Emmerson v. Botkin,* 26 Okla. 218, 109 Pac. 531, 29 L. R. A. [N. S.] 786, 138 Am. St. Rep. 953.)

This brings us to the third assignment of error, wherein defendant complains of the refusal of the trial court to sustain its demurrer to plaintiff's reply. Plaintiff in his reply alleges that he purchased the stock in controversy from the First State Bank of Ardmore at private sale; the same not having been advertised. Defendant contends that such sale was void, and that plaintiff acquired no rights as against defendant, and cites in support of such contention section 10, art. 1, chapter 6, Sess. Laws 1907-08, which reads as follows:

"That any bank may sell any personal property which may come into its possession as collateral security for any debt or obligation due it, upon posting a notice in five public places in the county wherein the property is to be sold, at least ten days before the time therein specified for such sale, and which notice shall contain the name of the bank and the name of the pledgor, the date of the pledge, the nature of the default, and the amount claimed to be due thereon at the date of the notice; a description of the pledged property to be sold and the time and place of sale."

Plaintiff alleges that the shares of stock had been pledged by McLish on June 24, 1908, to the First State Bank of Ardmore to secure a note given it by him in the sum of $5,255, and that said note contained the following provision:

"And I do hereby give to the legal holder of this note full power and authority to sell said collateral security or any portion thereof *at public or private sale* at the option of the holder on the nonperformance of the above promise, and *without advertising the same or otherwise giving me notice.*"

—and contends that the notice required to be given by section 10 of the statute, *supra,* may be waived by the pledgor. And we

are of the same opinion and especially, as in this case, where the Ardmore State Bank after June 24, 1908, had actual notice of the pledge by McLish to the First State Bank of the stock, and Mc-Lish was not at that time indebted to the Ardmore State Bank. At common law a pledgee could not sell without judicial process, unless reasonable notice to the pledgor to redeem, but this common-law rule can be waived as to notice and a public auction can be waived; and McLish, under the facts of this case, is the only person who could take advantage of this failure to give notice or sell at public auction, and from the record it clearly appears that he specifically waived such rights, and at a time, too, when he was not indebted to the issuing bank. Public sale of pledged property may be waived by stipulation of the parties, and in that event a private sale is valid. *Carson v. Gaslight Co.*, 80 Iowa, 638, 45 N. W. 1068; *Fitzgerald v. Blocher*, 32 Ark. 724, 29 Am. Rep. 3; *Hyatt v. Argenti*, 3 Cal. 151; *Jeanes' Appeal*, 116 Pa. 573, 11 Atl. 862, 2 Am. St. Rep. 624; 31 Cyc. 874, and many cases there cited. Had he at the time he made the pledge of stock been indebted to the issuing bank, he would have had no right to, nor could he have waived such notice to the detriment of the issuing bank, and the lien created by statute against the stockholder in favor of the bank would have been sufficient to protect the bank as against the pledgee.

This brings us to the last assignment of error, relied upon, viz: "The court erred in overruling motion of defendant for a verdict after all the evidence had been heard." Counsel for defendant insist that by virtue of the provisions of article 12 of their by-laws, which have been approved by the state banking commission, McLish could not transfer his stock to any one, because of the fact that he was indebted to the bank, but the record discloses that from June 25 to July 8, 1908, McLish was in no manner indebted to the Ardmore State Bank, he having paid all that he owed on the former date, and that during this time the Ardmore State Bank had actual knowledge that McLish had pledged his stock to the First State Bank. Hence, if the Ardmore State Bank thereafter, with full knowledge of the

stock having been pledged, permitted McLish to become indebted to it in the sum of $1,500, or any other sum, it did so at its peril, because, as found by the jury, it knew the stock owned by McLish had been pledged to the First State Bank. Surely the defendant could not prevent a transfer of stock when the owner of such stock was not indebted to the bank, and that McLish was not indebted to the Ardmore State Bank in any sum between June 25 and July 8, 1908, is an admitted fact by the bank. It does not matter what claims or liens the defendant bank may have had on the stock on or prior to June 24, 1908, because such liens, if any there were, had been discharged by McLish by paying all he owed the bank, and, when he had thus paid the bank all he owed it, the stock was clear, and the bank had no lien of any character on it, and McLish was its owner, and had a perfect right to pledge it to the First State Bank or any one else whom he might choose.

"Where a corporation had knowledge of the pledge of stock of one of its members, it will not be protected thereafter in extending credit to such member in reliance of its lien upon such shares." (Helliwell on Stock & Stockholders, par. 360, p. 676, note 37.)

"Where, by a valid provision, a lien is given to the corporation, an assignee or pledgee of a certificate takes subject to a lien for a debt to the corporation incurred by the transferrer subsequent to the assignment or pledge, and *before notice thereof is given to the corporation*, especially where the statute or charter provides no transfer shall be valid until made on the books of the corporation. The corporation cannot assert a lien for a debt contracted subsequent to notice of a pledge or transfer of the shares, even though the transfer is made in violation of a charter provision prohibiting the transfer of shares for a specified length of time after organization. Nor can the corporation assert a lien for a debt contracted after it has notice that the shareholder has agreed to transfer his shares and has been paid therefor." (26 A. & E. Enc. of L., Stock and Stockholders, p. 872, and notes 6, 7, 8, and 9 thereunder.)

In Michigan the legal title or general property of shares of corporate stock is in the pledgor. In the case of *Just v. Bank*, 132 Mich. 600, at page 606, 94 N. W. 200, 202, the court said:

"Whatever may be the English rule, we think it is settled that the courts of this country repudiate the idea that a *bona fide* purchaser or pledgee of stock takes it subject to claims that may subsequently arise in favor of the corporation if it has notice of his purchase, and that notice of the purchaser's rights is sufficient to protect them, although a demand for a transfer of the stock on the books of the corporation be not made."

*Prince Inv. Co. v. Land Co.,* 68 Minn. 121, 70 N. W. 1079; *Conant v. Reed,* 1 Ohio St. 298; *Bank of America v. McNeil,* 73 Ky. (10 Bush) 54; *Des Moines Loan & Trust Co. v. Des Moines National Bank,* 97 Iowa, 668, 66 N. W. 914; *Hotchkiss & Upson Co. v. Bank,* 15 C. C. A. 264, 68 Fed. 76; Cook, Stockh. & Corp. Law, 532, 727. See, also, *Michigan Trust Co. v. State Bank of Michigan,* 111 Mich. 310, 69 N. W. 645; *Oakland County Sav. Bank v. State Bank of Carson City,* 113 Mich. 284, 71 N. W. 453, 67 Am. St. Rep. 463.

In Minnesota, where the statute is stronger and more comprehensive than our own, the rule is:

"This provision relating to transfer on the books of the corporation is therefore solely for the protection and benefit of the corporation, but this protection does not go to the extent of empowering it to use its statutory authority as a weapon to deprive *bona fide* shareholders of valuable property rights occurring prior to the claims of the corporation, obtained by it with notice of the rights of such shareholders. Corporations are bound equally as individuals by actual notice of the rights of others; thus, if agents of the corporation should, with notice of the rights of the equitable owner, assist the legal holder to transfer the shares in violation of the trust, the company would be liable therefor. Hence the lien which the corporation has upon the stock or property of its members invested therein, due from them to the corporation, is such as it has acquired in good faith. The rights of the corporation are not therefore superior and paramount in all cases to those of the stockholders simply because of *their not registering or transferring the sale of stock on the books of the corporation.* * * * Therefore, as against the land company, no lien could attach to the stock for the indebtedness of Moore to the Prince Company, holding the naked legal title only with notice of agreement to transfer the stock and the entire conditions of the matter. If the adjudications in other jurisdictions are at variance with this rule, we do not feel disposed

to follow them, as we think this doctrine is more in harmony with the general principles applicable to the sale of personal property and where *notice is actually brought home to the parties to be affected by it."* (*Prince Investment Co. v. Land Co.,* 68 Minn. 121, 70 N. W. 1079.)

And this case was cited and approved in *Bank v. Life Ins. Clearing Co.,* 71 Minn. 123, 73 N. W. 713. In *Loan Co. v. National Bank,* 97 Iowa, 668, 66 N. W. 914, in discussing a similar statutory provision, the court says:

"Where the holder of stock assigned the same to defendant as collateral, the corporation being notified thereof, but no actual transfer made on the books of the corporation, and afterward the stock was assigned to the corporation as security for the registered holder's indebtedness, the corporation having had actual notice of the transfer to defendant, it cannot maintain a superior claim to the stock on the ground that no transfer was formally made on the books as required by a by-law providing that no transfer shall be valid unless so made."

In *Savings Bank v. Bank & Trust Co.,* 77 Vt. 189, 59 Atl. 827, a case where the charter provided a lien for the indebtedness of the pledgor and refused to permit a transfer of stock until such indebtedness had been paid, a stockholder, with notice to the issuing bank, transferred certain shares of his stock; the issuing bank thereafter loaned the stockholder money, and, when the certificate was presented for transfer, the bank refused to make it upon its books until the indebtedness was paid. The court held that the holder of a certificate of stock assigned to him as collateral security by indorsement, with power of attorney to make the transfer, had the equitable interest, and that the legal title was in the assignor, though the corporation and other creditors were unaffected with notice and the transaction was incomplete until the transfer was actually made on the books of the corporation, but also held:

"Although a corporation charter provides that its stock shall be transferred only upon its books and that no transfer shall be valid until the assignor shall have paid all debts due from him to the corporation, yet the corporation cannot refuse to record a transfer of stock when it has notice thereof and before the assignor becomes indebted to it."

The same doctrine was upheld in *Curtice v. Crawford Bank,* 118 Fed. 390, 56 C. C. A. 174; *Hotchkiss v. Bank,* 68 Fed. 76, 15 C. C. A. 264; *Merchants' Bank v. State Bank,* 10 Wall. 604, 19 L. Ed. 1008; *Birmingham Trust & Savings Co. v. National Bank,* 99 Ala. 379, 13 South. 112, 20 L. R. A. 600. In Jones on Pledges and Collateral Securities, par. 223, p. 166, it is said:

"But a corporation having notice that the stockholder has pledged his stock by a delivery of the certificate with a power to transfer the stock upon the books of the corporation cannot have a lien upon the stock for a credit afterwards extended to him upon the faith of its charter right to a lien to secure a stockholder's indebtedness. Such an equitable assignment of the stock affects one who has knowledge of it equally as much as if the transfer had been made upon the books. Notice to the executive officer of a corporation, such as the cashier of a bank, engaged in the active discharge of his duties, is notice to the corporation itself of such an equitable transfer; and such officer, knowing of the pledge of the stockholder's certificate to secure a promissory note, is presumed to know that it remains in pledge for a renewal of the original note. Knowledge of the original transaction should put the officer upon inquiry as to the state of the stockholder's shares before the corporation gave him credit upon the faith of his having stock upon which a lien could attach in favor of the corporation."

In *Bank v. McNeil,* 10 Bush (Ky.) 54, the court, speaking through Mr. Justice Lindsay, says:

"The indebtedness this lien is intended to secure is such as may exist at the time the stockholder attempts to dispose of his stock. It is manifest that the lien cannot become effectual for any purpose until the stockholder contracts a debt to the bank. Until this is done, his power to sell, give, devise, or incumber this stock is as perfect and complete as is his right so to dispose of or incumber any other personal property he may own. He cannot pass the complete legal title to his stock except by a transfer entered upon the books of the bank, nor can he by any arrangement, not made known to the bank, deprive it of the right to look to his stock as an ultimate security for the payment of any indebtedness it may innocently permit him to incur; but he may, by bargain and sale, by gift, devise, or pledge, divest himself of title, and, when he has done so, and notice has been given to the bank, it has no right to extend credit to him upon the faith of its charter lien upon his stock."

Ardmore State Bank v. Mason.

It seems to us, therefore, in view of the foregoing authorities, that the only real question in this case is one of notice. The jury found that the defendant had actual notice that McLish had pledged his stock to the First State Bank, and that, too, at a time when he was not indebted to the issuing bank. It is going too far to say that, in view of this knowledge, the defendant bank had yet a lien on the stock superior to that of the pledgee or its assigns. We do not think the Legislature intended to give to banks such an undue advantage in matters of this kind. Were such a thing necessary to protect the bank and its creditors, such intent might possibly be gathered from the statute, but this is not the case. The statute relied upon was not intended to restrict or hinder or control in any way a sale of bank stock by the owner, except in cases where he was indebted to the bank at the time of the sale. In the case at bar McLish was not indebted to the bank in any form between the 25th of June and the 8th of July, and any lien which the defendant may have had prior to June 25th had been fully satisfied and discharged, and after said date, when his stock was clear from the statutory lien, and McLish was not indebted to the bank, he had a right to sell, transfer or incumber his stock in any manner he chose. If the defendant, with full knowledge of the pledging of the stock, ignored the ordinary rules of business, and permitted him to again become indebted, thereafter, and while his stock was pledged, it could not expect to hold said stock which was then pledged to another under the statutory lien.

There is no merit in the contention that to uphold the sale of stock to plaintiff, under the circumstances of this case, would prove detrimental to the banking interests of the state. Banks have certain well-defined rights and privileges, but those rights and privileges are no more sacred than are those of individuals, and certainly it was not the intention of the Legislature to enact laws more beneficial to one class than another. To sustain defendant's contention would result in placing a premium on knavery and trickery, and would open a way whereby dishonest bank officials might prey on an unsuspecting public. On the other hand, banks pursuing a careful and conservative business will not

suffer. Where a bank loans money, especially to one of its stockholders, it should investigate and assure itself that the security taken is ample. If it fails to do so, it will not be heard to complain, and surely no fair-minded person would ask that an innocent party be made to suffer on account of the negligence and carelessness of the officials, who had every opportunity of protecting their bank, and especially, as in the case at bar (where the bank knew that the stock had been pledged), knowingly make other loans to the original owner of such stock and expect to hold as security therefor, under a lien known to have been discharged, property that had been pledged to another.

We can see no error in the record, and the judgment of the district court of Carter county should be affirmed.

By the Court: It is so ordered.

All the Justices concur.