## Judy et al. v. White et al.

(Decided April 28, 1931.)

A. J. MAY, EDWARD L. ALLEN, and C. B. WHEELER for appellants.

B. F. COMBS and JOSEPH D. HARKINS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Several years ago W. D. Judy, Jr., B. L. Porter, and N. M. White, Jr., organized the Winchester Coal Company, with a capital stock of $50,000, for the purpose of mining coal at a point near Prestonsburg. Each of them subscribed for 125 shares of stock and paid therefor the sum of $10,000. A certificate for 125 shares of additional stock was issued to Judy as trustee in consideration of a coal lease which he transferred to the company. Judy loaned White and Porter the money to buy their stock, and took from them several notes which were secured by their stock as collateral, and also by real estate mortgages. The mortgage from Porter covered a small tract of land on the Big Sandy river, and the mortgage from White covered a house and lot in Prestonsburg. One of White's notes for $4,000 was also

indorsed by N. M. White, Sr., and by his father-in-law, Steve Pieratt. White was elected president, Porter vice president, and Judy secretary and treasurer. Thereafter the capital stock was increased to $65,000. Some time later Judy borrowed from the Bank Josephine several sums aggregating $8,850, for which he executed his several notes secured by the Porter and Judy notes, and his own stock in the Winchester Coal Company as collateral. It was stipulated in the notes to the Bank that, in the event of his failure to pay them, the Bank could sell the collateral at either private or public sale, and without notice or advertisement.

At first the coal company was operated at a profit, but in the spring of 1926 business became poor, and the company ceased to pay dividends. It then owed about $40,000. About that time Judy became discouraged and left. Afterwards he wrote to White and Porter that he was going to try to get enough money to meet his interest at the Bank Josephine, and save the property; that he could not get any more money for the company; that it was up to them to run the mine; and that, in order to save the notes, he would have to get the money somewhere else. During the middle of the summer, Judy returned, and was confronted with the charge that he was indebted to the company in the sum of about $12,000. He then resigned as secretary and treasurer, and departed for Florida. At the request of Porter, White, and others interested, N. M. White, Sr., father of N. M. White, Jr., took charge of the mine. That summer and fall the coal company earned some money, and paid about $12,000 on its debts.

On September 14 of that year the Winchester Coal Company, at the instance of White and Porter, brought suit against all the stockholders, including themselves and Judy, and against the Bank Josephine and others, who claimed to hold the company's stock as collateral. The suit was based on the claim that, after the original stock had been issued, other certificates were issued without surrendering the original certificates, and the defendants were asked to produce all of their certificates, so that the illegal certificates could be canceled and the rightful stockholders determined. In the second paragraph it was charged that Judy was indebted to the company for $8,000 cash which he had taken from the company's treasury, and in the sum of $3,700 for merchandise which he had bought on the company's credit.

About that time Judy returned to Floyd county, and asked to be put in charge of the mine, but White and Porter would not consent to the arrangement. At that time he was behind in the payment of the principal and interest on his notes to the Bank Josephine, and told the cashier that the bank would have to do the best it could about collecting them. He also told the cashier to get the money out of the collateral and let it go as far as it would on his notes. The cashier first sold a small amount of government bonds, and applied the proceeds to the payment of the interest on the notes. On December 20, 1926, pursuant to authority contained in the notes, he sold the White and Porter notes and all the collateral to Ella Noel White, sister of N. M. White, Jr., for $8,850 cash which was the amount of Judy's notes.

On December 24, 1926, Judy filed an answer and cross-petition in the action brought by the coal company, and denied the allegations of the petition. The coal stock became worthless, and no further steps were taken in the main action. However, Judy made his answer a counter-claim against the coal company and a cross-petition against N. M. White, Jr., B. L. Porter, N. M. White, Sr., Ella Noel White, Steve Pieratt, and the Bank Josephine. He asked a recovery against White and Porter on the notes and mortgages they had executed to him, although he admitted that he was indebted to the Bank Josephine in the sum of $8,850, and that this sum was secured by the White and Porter notes and his stock in the Winchester Coal Company. In another paragraph he alleged that N. M. White, Jr., N. M. White, Sr., and Ella Noel White had entered into a fraudulent and corrupt combination to defraud him and to take from him his rights to his property, including the collateral and stock certificates; that N. M. White, Sr., had, through his influence and domination over N. M. White, Jr., his son, procured his codefendant the Bank Josephine to sell to the defendant Ella Noel White the stock certificates and the White and Porter notes, which had been attached as collateral to secure his notes to the bank. He further alleged that the notes and stock certificates held by the bank as collateral were worth $35,000, and that the Bank sold them for a wholly inadequate consideration. He also charged that the Whites were by fraudulent collusion and covin seeking to procure control of the Winchester Coal Company, and that N. M. White, Sr., "assumed to himself the authority to take control of the

company's property and business, and had prevented him (Judy) from having access to the premises of the company, or disposition of its earnings." The defendants filed an answer denying all the allegations contained in the cross-petition. Porter filed a separate answer and cross-petition against the Whites, in which he attacked the title of Ella Noel White to the collateral which she had purchased from the bank. He also prayed for a liquidation of the affairs of the company and for the appointment of a receiver. All the pleadings were traversed. The defendants proved the circumstances under which the sale of the collateral was made to Miss White as above set forth. Neither Judy nor Porter offered any evidence in support of their claims.

During the progress of the action, Ella Noel White brought suit against Porter to recover on his note, which she had purchased from the bank, and to enforce her mortgage lien. While this suit was pending, Porter had paid his Judy notes down to about $4,700. The two suits were consolidated.

On final hearing, the court dismissed the original petition against Judy, and also the cross-petitions of Judy and Porter. It was further adjudged that Ella Noel White, by her purchase from the Bank Josephine, was the owner of the notes that had been executed by N. M. White, Jr., and B. L. Porter to Judy. Judgment in her favor was rendered against Porter, and the mortgaged property was ordered to be sold. Judy, in his own right and as trustee, and B. L. Porter appeal.

In the original action brought by the coal company against Judy, judgment was rendered in his favor, and no appeal has been prosecuted therefrom. The propriety of that judgment not having been called in question, we are not concerned with the history of that suit or the motive of those who caused it to be brought. The only question before us is whether the court ruled correctly in dismissing Judy's and Porter's cross-petitions against Ella Noel White, the Bank Josephine, and the other defendants therein. The sole basis of these cross-petitions is that the sale of the Porter and White notes and other collateral to Ella Noel White was the result of a fraudulent conspiracy on the part of the Whites to deprive Judy of his stock in the coal company, and of his interest in the Porter and White notes. Though no evidence was offered in support of the charge of fraud, it is claimed that the transaction itself manifests a clear case

of unfair dealing. In support of this position it is argued that the relations of the parties were confidential, and that the sale of the collateral to Miss White operated to divest Judy of his interest in property worth far more than his indebtedness to the bank. As we view it, none of the parties sustained a confidential relation to Judy. Miss White in that respect was a total stranger, and had the same right to purchase collateral pledged to or by Judy that she had to purchase from any one else. The bank was a mere creditor, and was under no obligation to look after the interests of Judy. Under the terms of the loan to Judy, it had written authority upon his default in payment of his indebtedness to sell the collateral at public or private sale, and without notice or advertisement, and the contract was valid. Louisville Banking Co. v. W. H. Thomas & Son Co., 68 S. W. 2, 24 Ky. Law Rep. 115; Atlantic National Bank v. Korrick, 29 Ariz. 468, 242 P. 1009, 43 A. L. R. 1184; Ardmore State Bank v. Mason, 30 Okl. 568, 120 P. 1080, 39 L. R. A. (N. S.) 292. Pursuant to this authority, it made the sale to Miss White for the amount of its debt. There is no showing that the collateral so sold was worth more than the debt. On the contrary, the record discloses that the coal company's stock is worthless, and it does not appear that Porter and N. M. White, Jr., will be able to discharge their indebtedness. In its final analysis, the case is simply one where the bank had the legal right to sell, and Miss White the legal right to buy, and their motives are wholly immaterial. There being no proof of actual fraud, and the circumstances not being such as to impute fraud, it follows that the chancellor did not err in dismissing the cross-petitions.

Of course, Porter has no cause for complaint. He owes the debt, and it makes no difference to him whether the recovery is in favor of Judy or Miss White.

Judgment affirmed.